## MURRAY RUGGIERO *v.* DIANA RUGGIERO (AC 22426)

Lavery, C. J., and Schaller and Hennessy, Js.

Argued January 9—officially released April 22, 2003

*Diane Polan*, for the appellant (plaintiff).

*Margot Kenefick Burkle*, for the appellee (defendant).

*Kate L. Rizzo*, for the minor child.

*Opinion*

HENNESSY, J. The plaintiff, Murray Ruggiero, appeals from the judgment of the trial court rendered after it modified its order of custody and visitation of his minor children. The plaintiff claims that the court improperly ordered him to (1) undergo a psychological evaluation and (2) pay all of the attorney's fees for the guardian ad litem in connection with the proceedings to determine if the custody and visitation orders should be modified.[1]

The following facts and procedural history are necessary for our resolution of the plaintiff's appeal. On June 1, 1999, the court dissolved the marriage of the plaintiff and the defendant, Diana Ruggiero. At that time, the court rendered judgment based on a separation agreement between the parties. The court awarded the parties joint legal custody of the two minor children,[2]

[1] The plaintiff also appealed from the court's order for therapeutic visitation and its finding that he had engaged in parental alienation. Subsequent to the filing of the parties' briefs to this court, a new visitation agreement was reached between the parties. At oral argument, both parties agreed that those additional claims were moot based on the new visitation agreement.

As we will discuss, the court made a *factual* finding that the plaintiff had engaged in parental alienation. The plaintiff's claim concerning parental alienation dealt with the issue of the validity of a finding of parental alienation *syndrome*. The court did not address any potential mental health condition. This opinion utilizes the court's factual conclusion that the plaintiff's *activity as a parent* alienated the defendant, and this court makes no decision concerning the validity of such a syndrome.

[2] There is no accusation that the parents engaged in sexual abuse of the minor children and, therefore, General Statutes § 54-86e may not be applicable. There were allegations of abuse, however, and the names and gender of the minor children are omitted from this opinion.

with the defendant having physical custody and the plaintiff having visitation rights "not limited to a minimum of two days per week."

On September 22, 2000, the plaintiff filed a motion to appoint an attorney or guardian ad litem for his minor children. On September 28, 2000, at the request of the plaintiff, the matter of custody of the minor children was referred to the family services unit for an evaluation. The plaintiff claimed that the defendant was exhibiting abusive behavior toward his children.

On January 23, 2001, the court-appointed attorney Kate L. Rizzo to represent the minor children. On February 26, 2001, Phyllis Cummings-Texeira, a family services counselor, issued her assessment and recommendations. The counselor found that the plaintiff was coaching his minor child to say negative things about the defendant and to report false accusations. The evaluation also stated that the plaintiff's "use and involvement of the children borders on abusive. His inability to have any insight or, give any thought to the impact that his coaching would have on his children is reprehensible. [The defendant], on the other hand is provocative in her dealings with the [the plaintiff]. . . . [The plaintiff's] contact with his children is minimal and he should be permitted to have more access if he is able to refrain from the type of behavior that he has exhibited during this evaluation. . . . [The plaintiff's] blatant use and involvement of his children leads one to question his motivation for seeking custody and whether he truly believes that to triangulate his children is in their best interest."

On September 7, 2001, the court reduced the plaintiff's child support payment.[3] On September 14, 2001,

---

[3] From the date of the divorce judgment on June 1, 1999, through September, 2001, both parties had filed numerous motions dealing with visitation, psychiatric evaluations and child support. Those motions are not relevant to the issues involved with this appeal due to the agreement between the parties concerning visitation.

the defendant filed an ex parte motion for modification of visitation and custody seeking to grant her sole custody, and to suspend the plaintiff's visitation rights on the ground that continued visitation is not in the best interests of the children and is emotionally and psychologically damaging to the children. On the same day, the court ordered that the plaintiff and the defendant continue to have joint legal custody, but ordered the plaintiff not to have contact with the children "pending further order of the court." The court also ordered that Rizzo "shall immediately resume her representation [of] the children in the capacity of guardian ad litem, her payment to be determined." The court also instructed Rizzo to make recommendations concerning any physical or psychological examinations of the children prior to a hearing.

On September 15, 2001, the department of children and families (department) received a referral from the social worker at the school of one of the children concerning allegations of abuse. The matter was investigated by Erin Cowley, a social worker from the department. During an initial interview by Cowley, the older child claimed that the younger sibling was being abused by a male acquaintance of the defendant. During Cowley's second interview, she asked for details concerning the alleged abuse, and the older child told her that the story had been fabricated. Initially, the older child told Cowley that the plaintiff had told the older child to make up the story. At a later time, the older child told Cowley that the story had been made up without the plaintiff's involvement. Cowley testified that she and the school social worker believed that the children were not being abused by the defendant or any of the defendant's friends.

On September 20, 2001, the plaintiff filed a motion for evaluation of the minor children by an independent therapist. On September 27, 2001, the plaintiff filed a

motion for an evaluation to determine whether the defendant suffers from alcoholism. On October 1, 2001, the plaintiff filed a response to the defendant's ex parte motion to modify custody and visitation. On October 2, 2001, the defendant filed a motion for a psychiatric evaluation of the plaintiff. On October 2, 2001, the plaintiff filed a motion for a polygraph examination of both parties, and a motion for psychiatric evaluation and testing for both parties.

On October 2 and 10, 2001, the court heard evidence concerning the motion for modification of visitation and custody and the parties' other motions. The court heard testimony from the plaintiff and the defendant, and from Rizzo, Cowley, Cummings-Texeira and the plaintiff's current wife, Angela Ruggiero. Following the presentation of evidence, the court stated: "Here's what's sad about this case. [The plaintiff] has raised an issue of parental alienation, and it's my finding that [the plaintiff] has been guilty of parental alienation in two ways: One of them is that he . . . attempted to alienate the children from [the defendant], and the second is that the result of that is that he has alienated the children from himself." The court then gave its reasons for concluding that the plaintiff himself was responsible for the alienation of the children.

The court then ruled that "[the plaintiff's] motion for a psychiatric evaluation of the family unit is denied subject to whatever orders I make. [The plaintiff's] motion for a polygraph exam is denied. . . . [The plaintiff's] motion for evaluation of alcohol abuse by [the defendant] is denied. [The plaintiff's] motion for an independent therapist is denied. [The defendant's] motion for a psychiatric exam concerning [the plaintiff] is granted. . . .

"I'm going to follow attorney Rizzo's recommendation that visitation be in a therapeutic environment. But

what I'm going to require is that before that visitation takes place, that [the older child's counselor, John Renzulli] see the child separately on one or two occasions as he believes is necessary. And that thereafter, [the plaintiff] will meet with him and the child, and this is specifically with regard to [the older child]; when their therapeutic visitation takes place on separate occasions, it can be with [the younger child] if Mr. Renzulli feels that that is necessary. And that when Mr. Renzulli believes that the objectives of therapeutic visitation have been accomplished, that the attorney for the children will return to the court with an immediate motion concerning visitation and I will address how visitation will take place after that time." The court also ruled that the plaintiff would pay all of Rizzo's fees as guardian ad litem since the reappointment on September 14, 2001. Additional facts will be set forth as necessary.

I

The plaintiff's first claim is that the court improperly ordered him to undergo a psychiatric evaluation. The plaintiff claims that the court lacks authority to order a psychiatric evaluation in a postjudgment motion if there no longer is a pending family matter. See *Janik* v. *Janik*, 61 Conn. App. 175, 179, 763 A.2d 65 (2000), cert. denied, 255 Conn. 940, 768 A.2d 949 (2001); *Savage* v. *Savage*, 25 Conn. App. 693, 701, 596 A.2d 23 (1991). We conclude that the order for a psychiatric evaluation no longer is in effect due to events that have occurred subsequent to the filing of this appeal because there no longer is a pending family matter.

General Statutes § 46b-6[4] allows a court to order an investigation in a *pending* family matter that may be

[4] General Statutes § 46b-6 provides: "In any pending family relations matter the court or any judge may cause an investigation to be made with respect to any circumstance of the matter which may be helpful or material or relevant to a proper disposition of the case. Such investigation may include an examination of the parentage and surroundings of any child, his age,

helpful to the proper disposition of the case. General Statutes § 46b-3[5] allows the court to employ the services of a psychologist or psychiatrist in carrying out such an investigation.

In *Savage*, this court stated that the trial court abused its discretion when it ordered a postjudgment consultation of the parties and the minor with a child expert four times a year "so that more information could be gathered in hopes that the parties would agree in the future to a custody arrangement or that the attorney for the minor children would move, *if appropriate*, for a modification of the court's custody order." (Emphasis added.) *Savage* v. *Savage*, supra, 25 Conn. App. 699. This court stated: "Until such time as a motion for modification of custody is made and a court has altered custody, the original custody award remains undisturbed. . . . The trial court's order here compelling consultation with [the counselor] for two years into the future is not a proper custody order but rather is an attempt to force consultation for purposes of a postjudgment evaluation. There is no statutory authorization for such an evaluation without a pending motion or matter before a court." (Citation omitted.) Id., 701.

In *Janik*, the plaintiff sought to modify custody. *Janik* v. *Janik*, supra, 61 Conn. App. 176–77. The court ordered a change from joint legal custody and visitation

habits and history, inquiry into the home conditions, habits and character of his parents or guardians and evaluation of his mental or physical condition. In any action for dissolution of marriage, legal separation or annulment of marriage such investigation may include an examination into the age, habits and history of the parties, the causes of marital discord and the financial ability of the parties to furnish support to either spouse or any dependent child."

[5] General Statutes § 46b-3 (a) provides in relevant part: "For the purposes of any investigation or pretrial conference the judge presiding at any family relations session may employ the services of any probation officer, including those under the direction of the Office of Adult Probation, physician, psychologist, psychiatrist or family counselor. . . ."

rights in the plaintiff to sole legal and physical custody with the plaintiff and visitation rights to the defendant. Id. In addition, the court ordered a psychiatric evaluation of the defendant. Id., 177–78.

On appeal, this court stated that although the trial court had authority to order a psychiatric or psychological evaluation for the purpose of determining the best interests of the child and disposing of a family matter in a modification of custody case, the court did not have authority to order the evaluation *after* it modified custody. Id., 180. "We noted in *Savage* that the statutory provisions, §§ 46b-6 and 46b-3, refer to *pending* family relations matters only and, moreover, that the utility of such evaluations lies in their ability to shed light on the facts of a particular case so that it may be disposed of properly. . . . Once a case has been disposed of by the rendition of a final judgment and there is nothing further pending . . . there is no longer a reason for ordering an ongoing evaluation." (Citation omitted; internal quotation marks omitted.) Id., 179.

In the present case, we do not need to address the issue of whether the matter was still a pending family matter when the court ordered the plaintiff to undergo a psychiatric examination. Under *Janik* and *Savage*, the order for a psychiatric evaluation is no longer in effect because events subsequent to the filing of this appeal have rendered this no longer a *pending* family matter.

On October 18, 2001, the plaintiff filed a motion to reconsider psychiatric evaluation and testing of the family unit in which he requested that both parties and the minor children undergo psychiatric evaluation. In that motion, the plaintiff stated: "I am willing to go for an evaluation. The court can set it up on a sliding scale because I do not have medical insurance. I believe that both parents should be evaluated." On October 26, 2001,

the plaintiff filed this appeal. On December 4, 2001, the defendant filed a motion for contempt that included a request for a finding of contempt "on the part of the plaintiff for his failure to undergo a psychiatric evaluation as ordered by this court." On January 3, 2002, the court denied the motion for contempt "with respect to the plaintiff's failure to undergo a psychiatric evaluation pursuant to court order."

On May 15, 2002, Rizzo, acting as guardian ad litem for the children, filed a motion for modification of visitation, requesting a termination of supervised visitation. On October 24, 2002, the court approved an agreement and issued an order that included an unsupervised visitation schedule for the plaintiff. The agreement stated that "[t]he above visitation schedule is subject to monitoring."[6]

We conclude that the court, having accepted the agreement and issued its custody and visitation orders, has no motion pending before it and therefore lacks statutory authority to order the plaintiff to undergo a psychiatric evaluation. See *Savage* v. *Savage*, supra, 25 Conn. App. 701. The order of a psychiatric examination for the purpose of properly disposing of a family matter, in a modification of custody case, is to assist in determining the best interest of the child. *Janik* v. *Janik*, supra, 61 Conn. App. 178; see also *Pascal* v. *Pascal*, 2 Conn. App. 472, 479, 481 A.2d 68 (1984) ("[§ 46b-6 and § 46b-3] provide a means by which the court, in its discretion, may obtain a disinterested assessment of the facts"). When the court approved the agreement and issued its visitation order, it was determining the best interests of the children without the assistance of the plaintiff's psychiatric evaluation,

---

[6] We note that the court continues to have jurisdiction over custody and visitation matters subject to a motion to modify pursuant to General Statutes § 46b-56. See *Schult* v. *Schult*, 40 Conn. App. 675, 686, 672 A.2d 959 (1996), aff'd, 241 Conn. 767, 699 A.2d 134 (1997).

and the purpose of the evaluation has been rendered moot. The dispute no longer is a pending family matter on the basis of the court's acceptance of the custody and visitation agreement.[7]

"It is a well-settled general rule that the existence of an actual controversy is an essential requisite to appellate jurisdiction; it is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow. . . . An actual controversy must exist not only at the time the appeal is taken, but also throughout the pendency of the appeal. . . . When, during the pendency of an appeal, events have occurred that preclude an appellate court from granting any practical relief through its disposition of the merits, a case has become moot." (Internal quotation marks omitted.) *Schiavone* v. *Snyder*, 73 Conn. App. 712, 716, 812 A.2d 26 (2002). Because the court no longer has the statutory authority to order the plaintiff to submit to a psychiatric evaluation, the order that he do so must be vacated.

## II

The plaintiff's second claim on appeal is that the court improperly ordered him to pay all of the fees for the guardian ad litem for his minor children in connection with the proceedings to determine if the custody and visitation orders should be modified. The plaintiff claims that the court did not consider the respective financial circumstances of the parties. We do not agree.

The court may order either party to pay the fees for the guardian ad litem pursuant to General Statutes

---

[7] The plaintiff filed motions after the agreement was approved by the court. Those motions concern financial affairs, and do not involve visitation and custody issues.

§ 46b-62,[8] and how such expenses will be paid is within the court's discretion. *Roach* v. *Roach*, 20 Conn. App. 500, 508, 568 A.2d 1037 (1990). "[W]e may not alter an award of attorney's fees unless the trial court has clearly abused its discretion, for the trial court is in the best position to evaluate the circumstances of each case. . . . Because the trial court is in the best position to evaluate the circumstances of each case, we will not substitute our opinion concerning counsel fees or alter an award of attorney's fees unless the trial court has clearly abused its discretion." (Citation omitted; internal quotation marks omitted.) *LaMontagne* v. *Musano, Inc.*, 61 Conn. App. 60, 64, 762 A.2d 508 (2000).

The court made a factual finding that the plaintiff had behaved inappropriately and, therefore, should be required to pay for the fees of the guardian ad litem. Pursuant to § 46b-62, the court must consider the total financial resources of the parties when awarding attorney's fees. *Turgeon* v. *Turgeon*, 190 Conn. 269, 280, 460 A.2d 1260 (1983). The record indicates that the court did understand and consider the parties' financial circumstances when it ruled during the proceedings. When the court ruled that the plaintiff would be required to pay the attorney's fees for the guardian ad litem for the children, the court also discussed the potential need of the parties to undergo counseling. During that part of the ruling, the court stated: "I'm aware of the financial

---

[8] General Statutes § 46b-62 provides in relevant part: "In any proceeding seeking relief under the provisions of this chapter . . . the court may order either spouse or, if such proceeding concerns the custody, care, education, visitation or support of a minor child, either parent to pay the reasonable attorney's fees of the other in accordance with their respective financial abilities and the criteria set forth in section 46b-82. If, in any proceeding under this chapter . . . the court appoints an attorney for a minor child, the court may order the father, mother or an intervening party, individually or in any combination, to pay the reasonable fees of the attorney or may order the payment of the attorney's fees in whole or in part from the estate of the child. . . ."

circumstances of these parties . . . ." The court also heard evidence concerning the decrease in child support payments that the plaintiff was required to pay to the defendant. The record indicates that the court considered the financial circumstances of the parties, and the plaintiff has not persuaded us that the court abused its discretion.

The order that the plaintiff undergo a psychological evaluation is vacated and the award of attorney's fees is affirmed.

In this opinion the other judges concurred.