******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

IN RE HENRRY P. B.-P.*
(AC 39276)
(AC 39787)

Lavine, Mullins and Bear, Js.

*Argued January 20—officially released February 24, 2017***

(Appeal from Superior Court, judicial district of Hartford, Juvenile Matters, Dannehy, J. [judgment of dismissal underlying AC 39276]; Burgdorff, J. [judgment of dismissal underlying AC 39787])

*Enelsa Diaz*, with whom were *Giovanna Shay* and, on the brief, *Kelly Bonafé*, for the appellants (petitioner et al.).

*Edwin D. Colon* filed a brief for the Center for Children's Advocacy, Inc., as amicus curiae.

*Opinion*

BEAR, J. These appeals highlight the limitations that courts encounter when relevant statutes provide rights, opportunities, or protections for minor children that end when they reach the age of majority, thus losing their status as juveniles. In this case, what Henrry P. B.-P. (Henrry) faces, because of Connecticut's current statutory structure, is his inability to have the Probate Court consider and make the findings that are necessary for him to petition the federal government to remain in this country. The law that we are constrained to apply, as an intermediate appellate court, in our plenary review of the relevant legal issues raised in these consolidated appeals is set forth in two recent Supreme Court opinions, *In re Jose B.*, 303 Conn. 569, 34 A.3d 975 (2012), and *In re Jessica M.*, 303 Conn. 584, 35 A.3d 1072 (2012). See also *In re Pedro J. C.*, 154 Conn. App. 517, 543 n.22, 105 A.3d 943 (2014). We conclude, on the basis of that law, that after Henrry reached the age of majority, the Probate Court lacked statutory authority to make the findings required by the petitions filed by his mother, the petitioner, Reyna P. A., to appoint a coguardian for Henrry, and to consider and make the special immigration juvenile status (juvenile status) findings permitted by General Statutes § 45a-608n (b) for minor children. Accordingly, we affirm the judgments of the Superior Court dismissing the appeals from the decisions of the Probate Court.

The following factual and procedural history is relevant to these appeals. Approximately five weeks before Henrry reached age eighteen, the petitioner, on March 1, 2016, filed a petition in the Probate Court seeking the removal of his deceased father as his guardian and the appointment of a nonrelative, her boyfriend, Santos O. R., as coguardian of Henrry with her. The petitioner represented in that petition that Henrry had been abandoned by his father in the sense that he had failed to maintain a reasonable degree of interest, concern or responsibility for Henrry's welfare; that Henrry had been denied the care, guidance or control necessary for his physical, educational, moral, or emotional well-being as a result of acts of parental commission or omission as defined by law; and that Henrry was neglected or uncared for, as defined in General Statutes § 46b-120. Also on March 1, 2016, the petitioner filed a petition for special immigrant juvenile findings under 8 U.S.C. § 1101 (a) (27) (J) (2012). Despite the petitioner's request, the Probate Court did not take action prior to Henrry's eighteenth birthday on either of the petitions.

The first appeal to the Superior Court filed by the petitioner and Henrry was from the denial of the petition to the Probate Court seeking emergency relief before Henrry reached the age of majority and ceased to be a juvenile. On May 19, 2016, the Superior Court for Juvenile Matters dismissed that appeal for lack of jurisdic-

tion, and on June 2, 2016, the petitioner and Henrry filed the appeal in AC 39276 in this court.

In their first appellate brief to this court, the petitioner and Henrry set forth the following additional facts and procedural history: "This appeal stems from the Juvenile Court's dismissal of the . . . appeal from Probate Court, in which the Probate Court denied . . . [Henrry] then a minor child, and his mother, [the petitioner], the opportunity to be heard before Henrry turned eighteen years old, and to obtain necessary [juvenile status] findings, based on a misinterpretation of Connecticut's 2014 [juvenile status] findings statute, § 45a-608n.

"[The petitioner] and her two minor children, Henrry and [his sister], are from Honduras. After her husband and father-in-law were brutally murdered by the same group of individuals, [the petitioner] fled Honduras, seeking safety in the United States and leaving her two minor children behind with their paternal grandmother because they were too young to make the treacherous journey into the [United States]. As the children grew into adolescents, the threats against them began to escalate as well. . . . Eventually, fearing for their lives, the two minor siblings, unbeknownst to relatives, decided to embark on their own journey into the United States to find their mother and seek refuge. . . .

"Upon entering the United States in 2015, Henrry and [his sister] were detained by Immigration Customs and Border Patrol and then ultimately released to [the petitioner] in Connecticut. They were seventeen and sixteen years old at that time. Since arriving in Connecticut, both minors have resided with [the petitioner] and the proposed coguardian in this case, [Santos O. R.], and have been enrolled in . . . high school, where Henrry recently completed tenth grade. . . . Both [the petitioner] and [Santos O. R.] work full-time to support the needs of Henrry and his siblings. . . .

"On March 1, 2016, approximately five weeks prior to Henrry's eighteenth birthday, [the petitioner], through counsel, initiated the underlying Probate Court action. On that date, she filed a petition for removal of guardian, to remove her minor children's father as guardian and affirm herself as guardian, and additionally seeking the appointment of [Santos O. R.] as her coguardian. . . . On that date, she also filed a petition for special immigrant juvenile status [(juvenile status)] findings under 8 U.S.C. § 1101 [(a) (27) (J) (2012)], pursuant to § 45a-608n, to be used in connection with an application to the United States Citizenship and Immigration Services [(Immigration Services)]. . . . Finally, on that date, [the petitioner] filed a motion for waiver of study by the Department of Children and Families [(department)] for Henrry, notifying the Probate Court that Henrry would be turning eighteen in approximately five weeks, and that time was of the essence. . . .

"In her motion for waiver of the [department] study, [the petitioner] stated that Henrry was currently without legal status in the United States and [was] seeking findings from the court in connection with an application for [juvenile status] through [Immigration Services]. . . . She explained that the child had fled his country of origin of Honduras due to threatened violence against his life and that of his sister; that the father and paternal grandfather of the minor child[ren] were both murdered by the same individuals who are now seeking to murder him and his sister as well; that it was not in the child's best interest to be returned to his country of origin where he will be placed at risk of imminent death. . . . She further claimed that no [department] study was needed here where the child was found to be in good health, was currently in the care of his biological mother and the proposed coguardian, [Santos O. R.], who have the emotional and physical ability to care for the minor, have the financial resources to care for the minor, and neither of which have a history of child abuse or neglect investigations or substantiations. . . . Finally, her motion stated that Henrry was over the age of twelve years old and consented to the petitions and relief sought, and was emotionally connected with [her], who would remain as guardian of the child. . . . Her motion concluded that it was in the best interest of the child to expedite the underlying petitions, indicating that the requirement to have the commissioner of [the department] complete a study would cause unreasonable delay that could prohibit this child from seeking relief from [Immigration Services] to obtain legal immigration status. . . .

"On March 23, 2016, the Probate Court issued its first order of notice of hearing in this case indicating that the matter was being set down for a hearing with 'no appearance necessary' by the parties on April 22, 2016, a date after Henrry's eighteenth birthday. . . . The Probate Court also [sent notice to] a [department] social work supervisor, ordering [the department] to complete a study for both minors on the petition for removal, and impliedly denying [the petitioner's] motion for the waiver of study by [the department] for Henrry. . . .

"On April 1, 2016, with Henrry's eighteenth birthday closely approaching, with no [department] study and no hearing date, [the petitioner] filed an emergency petition for findings under § 45a-608n, the [juvenile status] statute. . . . In her motion, [the petitioner] requested that the court make findings in connection with her petition for [juvenile status] findings, or, in the alternative, hold an emergency hearing before Henrry's eighteenth birthday, in order to do so. . . . The attorney for the child, appointed by the Probate Court, Attorney Frank Twohill, having received a copy of the Emergency Petition, visited with the child and wrote a letter to the court indicating both his support for the

Petition, and his availability for an evidentiary hearing on the emergency petition, should the court choose to hold one. . . .

"On April 1, 2016, the Probate Court [*Chadwick, J.*,] denied the emergency petition in a brief written order, indicating that: 'The Emergency Petition for Findings under [§] 45a-608n, dated April 1, 2016, is hereby DENIED by the court. Pursuant to [§] 45a-608n (b), the granting of a petition to remove is a prerequisite to making the requested written findings.' . . . Henrry subsequently turned eighteen a few days later, before any hearing was ever held in the Probate Court.

"On April 22, 2016, [the petitioner] and Henrry (now eighteen years old) jointly filed an appeal to Superior Court for Juvenile Matters pursuant to [General Statutes §] 45a-186 (a) and Practice Book § 10-76 (a), appealing both the March 23, 2016 order, setting a 'no appearance' hearing after Henrry's eighteenth birthday and impliedly denying [the petitioner's] motion for waiver of the study by [the department], and the April 1, 2016 order, denying the emergency petition for findings under [§] 45a-608n. . . . The [appeal] raised three claims: (1) that the Probate Court had misinterpreted § 45a-608n (b) by concluding that it could not make [juvenile status] findings without deciding the underlying petition on removal of a guardian and appointment of a coguardian; (2) that the Probate Court had violated due process by failing to set a hearing prior to Henrry's eighteenth birthday, thus denying the [petitioner and Henrry] an opportunity to be heard at a meaningful time and in a meaningful manner; and (3) that the Probate Court had abused its discretion. . . . [The petitioner and Henrry] requested that the Juvenile Court reverse the Probate Court and remand for a hearing on [juvenile status] findings. . . . The Juvenile Court set the matter down for a hearing on May 19, 2016, and another attorney was appointed for Henrry as attorney for the minor child. . . .

"On May 19, 2016, the Juvenile Court [*Dannehy, J.*,] dismissed the appeal from Probate Court on the record, without holding an evidentiary hearing, stating that the Juvenile Court lacked jurisdiction over the appeal, because Henrry was now eighteen years old. . . . [The petitioner] and Henrry filed [the appeal in docket number AC 39276] with this court on June 2, 2016. . . .

"On May 31, 2016, subsequent to the taking of this appeal, and approximately eight weeks after Henrry's eighteenth birthday, [the department] completed its social study on both Henrry and his sister . . . and provided its report to the Probate Court. In its report, [the department] indicated its support for the pending petitions, asking that the court grant the petition to remove the father as guardian, to affirm [the petitioner] as guardian, and to appoint [Santos O. R.] as coguardian of Henrry and his [sister]. . . .

"On June 3, 2016, the Probate Court issued another order for notice of hearing, this time scheduling an actual hearing date for the underlying petitions for July 19, 2016, but the hearing was set down for [Henrry's sister] . . . and not for Henrry. . . . On June 22, 2016, [the petitioner] filed a motion to schedule hearing or for a dispositive order in Henrry's case. . . . The Probate Court responded to the motion by scheduling a hearing on the underlying petitions for Henry on July 19, 2016, along with that of his younger sister . . . .

"On July 19, 2016, the Probate Court held a full hearing for both Henrry and his sister, first entertaining legal argument from counsel on the jurisdictional issue regarding Henrry's case, now that he is eighteen, and then taking testimony on the substantive issues from all the interested parties. The matter was then taken under advisement . . . ." (Citations omitted; footnotes omitted.)

On August 30, 2016, the Probate Court mailed its decision affirming the petitioner as sole guardian, but denying her petition for removal of the father as guardian and the appointment of Santos O. R. as coguardian of Henrry because Henrry was eighteen years old and no longer a minor child. It declined to make the requested juvenile status findings, also because Henrry was age eighteen and no longer a minor child. On September 26, 2016, the petitioner and Henrry filed a second appeal to the Superior Court for Juvenile Matters from the Probate Court's August 30, 2016 decision, and on November 1, 2016, that appeal was dismissed. On November 4, 2016, the petitioner and Henrry appealed to this court. The two appeals were consolidated and the petitioner and Henrry were allowed to file a supplemental brief. That brief contained a supplemental statement of facts and procedural history as follows:

"This account supplements the statement of facts in the . . . opening brief in AC 39276. This consolidated appeal challenges first the interlocutory orders (appealed in AC 39276) and then the final orders (appealed in AC 39787) of the Probate Court. The appeal in AC 39276 challenges the denial of a hearing on [the petitioner's] petitions in Probate Court before Henrry turned eighteen, and the Juvenile Court's May 19, 2016 dismissal of the . . . appeal from [the Probate Court] . . . . The appeal in AC 39787 challenges the Probate Court's final orders denying [the petitioner's] petitions because Henrry had turned eighteen, which were appealed to the Juvenile Court . . . and dismissed on November 1, 2016.

"The underlying petitions filed by [the petitioner] on March 1, 2016, for removal of Henrry's deceased parent as guardian and appointment of [Santos O. R.] as coguardian were eventually heard over four and a half months later, because the Probate Court ordered [the

department] to conduct a home study regarding the soon-to-be eighteen year old consenting minor, who was already residing with the petitioning parent and proposed coguardian. The [department's] study was returned to the Probate Court approximately two months after Henrry's eighteenth birthday. The Probate Court then held a hearing for Henrry on July 19, 2016, in the Hartford Regional Children's Probate Court. . . .

"On August 30, 2016, the Probate Court mailed its final orders from the July 19, 2016 hearing in Henrry's case. In those orders, the Probate Court affirmed [the petitioner] as sole guardian but denied the underlying petition for removal of guardian and request for appointment of coguardian because Henrry had turned eighteen. . . . It declined to make the [juvenile status] findings, and closed Henrry's case. . . .

"On September 26, 2016, [the petitioner and Henrry] filed a joint appeal from Probate Court in the Juvenile Court. . . . That appeal was dismissed on November 1, 2016, because Henrry was eighteen. . . .

"On November 4, 2016, [the petitioner and Henrry] filed a joint appeal to the Appellate Court, which was docketed as AC 39787, [and] . . . moved to consolidate AC 39787 with their pending appeal AC 39276. . . . This court granted that motion and allowed for this supplemental brief." (Citations omitted; footnotes omitted.)

We assume in deciding these consolidated appeals that the statements of facts and procedural history set forth previously are reasonably accurate. We also take note of the statements of counsel during oral argument before this court that Henrry and his sister had arrived in the United States from Honduras approximately eight months prior to the filing of the petitions in the Probate Court, and that the petitioner had contacted such counsel approximately one month prior to the eventual filing of the petitions.

The claims[1] raised in these appeals arise from and depend on several statutes set forth in chapter 802h of the General Statutes, which pertains to protected persons, including minors or minor children. Our review is therefore plenary. *In re Jose B.*, supra, 303 Conn. 580. Part II of chapter 802h relates to guardianship of minors. Pursuant to General Statutes § 45a-604 (4), "minor" or "minor child" means a person under the age of eighteen. Pursuant to General Statutes § 45a-604 (5), "guardianship" means guardianship of the person of a minor. Pursuant to General Statutes § 45a-606, the biological father and mother are joint guardians of the person of the minor, and the powers, rights, and duties of the father and the mother in regard to the minor are equal. If either the father or the mother dies or is removed as guardian, the other parent becomes the sole guardian of the person of the minor child. General

Statutes § 45a-606. In this case, therefore, on the date the petitioner filed the petitions she, pursuant to § 45a-606, was Henrry's sole guardian because his father was and had been deceased before he arrived in the United States. There is no mention in that statute, in § 45a-608n, or in any other of the statutes in part II of chapter 802h, of any statutory authority granted to Connecticut courts to take action with respect to a person who has reached the age of majority. Section 45a-608n by its terms applies solely during the minority of any child.[2]

General Statutes § 45a-609 (a) provides in relevant part: "Upon application for removal of a parent or parents as guardian, the court shall set a time and place for hearing to be held within thirty days of the application, unless the court requests an investigation in accordance with the provisions of section 45a-619. In that case, the court shall set a day for hearing not more than thirty days following receipt of the results of the investigation. . . ."

General Statutes § 45a-616 provides in relevant part: "(b) If any minor has a parent or guardian, who is the sole guardian of the person of the child, the court of probate for the district in which the minor resides may, on the application of the parent or guardian of such child or of the Commissioner of Children and Families with the consent of such parent or guardian and with regard to a child within the care of the commissioner, appoint one or more persons to serve as coguardians of the child. When appointing a guardian or guardians under this subsection, the court shall take into consideration the standards provided in section 45a-617. . . .

"(c) Upon receipt by the court of an application pursuant to this section, the court shall set a time and place for a hearing to be held within thirty days of the application, unless the court requests an investigation in accordance with the provisions of section 45a-619, in which case the court shall set a day for hearing not more than thirty days following receipt of the results of the investigation. The court shall order notice of the hearing to be given to the minor, if over twelve years of age, by first class mail at least ten days prior to the date of the hearing. In addition, notice by first class mail shall be given to the petitioner and all other parties in interest known by the court."

General Statutes § 45a-617 provides that "[w]hen appointing a guardian, coguardians or permanent guardian of the person of a minor, the court shall take into consideration the following factors: (1) The ability of the prospective guardian, coguardians or permanent guardian to meet, on a continuing day to day basis, the physical, emotional, moral and educational needs of the minor; (2) the minor's wishes, if he or she is over the age of twelve or is of sufficient maturity and capable of forming an intelligent preference; (3) the existence or nonexistence of an established relationship between

the minor and the prospective guardian, coguardians or permanent guardian; and (4) the best interests of the child. There shall be a rebuttable presumption that appointment of a grandparent or other relative related by blood or marriage as a guardian, coguardian or permanent guardian is in the best interests of the minor child.''

The petitioner alleged in her petition for removal of Henrry's father as guardian classic neglect allegations: that Henrry had been abandoned; that he had been denied the care, guidance or control necessary for his physical, educational, moral, or emotional well-being as a result of acts of parental commission or omission as defined by law; and that Henrry was neglected or uncared for, as defined in § 46b-120. General Statutes § 45a-619 provides in relevant part: ''In any proceeding under sections 45a-603 to 45a-624, inclusive, in which the applicant has alleged that the minor has been abused or neglected, as those terms are defined in section 46b-120, or in which the probate judge has reason to believe that the minor may have been abused or neglected, the Court of Probate **shall request** the Commissioner of Children and Families or any organization, agency or individual licensed or approved by the commissioner, to make an investigation and written report to it, within ninety days from the receipt of such request, unless the request concerns an application for immediate temporary custody or temporary custody, in which case the commissioner shall render the report by such date as is reasonably ordered by the court. The report shall indicate the physical, mental and emotional status of the minor and shall contain such facts as may be relevant to the court's determination of whether the proposed court action will be in the best interests of the minor, including the physical, social, mental, and financial condition of the parties, and such other factors which the commissioner or agency finds relevant to the court's determination of whether the proposed action will be in the best interests of the minor. . . .'' (Emphasis added.) Because of the petitioner's allegations in her petition for removal of guardian, § 45a-619 mandated the Probate Court to request an investigation and report. This mandate is made clear by additional language in § 45a-619: ''In any other proceeding under sections 45a-603 to 45a-624, inclusive, the court shall request an investigation and report **unless this requirement is waived for cause shown.**'' (Emphasis added.) The authority of the Probate Court to waive the investigation and report thus is limited to cases not involving allegations of abuse or neglect.

As previously set forth, the petitioner had petitioned for the removal of the father as guardian by alleging that Henrry had been abandoned by his father; had been denied the care, guidance or control necessary for his physical, educational, moral, or emotional well-being as a result of acts of parental commission or omission

as defined by law; and that Henrry was neglected or uncared for, as defined in § 46b-120. She asked for the appointment of a nonrelative of Henrry as his guardian. In light of the language of and the considerations raised in the relevant statutes, and Henrry's relatively short time in Connecticut, the Probate Court's decision not to waive the statutory requirement for an investigation and report was within its discretion.[3]

As stated previously, the law that we apply in analyzing this appeal is set forth in two recent Supreme Court opinions, *In re Jose B.*, supra, 303 Conn. 569, and *In re Jessica M.*, supra, 303 Conn. 584. See also *In re Pedro J. C.*, supra, 154 Conn. App. 517. We, therefore, are constrained to conclude that after Henrry reached the age of majority, the Probate Court lacked statutory authority to appoint a coguardian for him and to make the juvenile status findings permitted by § 45a-608n.

Our Supreme Court in *In re Jose B.* considered the application of General Statutes § 46b-129 (a)[4] to the petitioner in that case, a minor child who had reached the age of majority shortly after the petition was filed: "Thus, the question in the present case is whether the trial court has statutory authority pursuant to § 46b-129 (a) to adjudicate a person who has reached the age of eighteen years as neglected or uncared-for, and to commit such a person to the care of the department pursuant to § 46b-129 (j). This is a question of statutory interpretation over which our review is plenary. See *State ex rel. Gregan* v. *Koczur*, 287 Conn. 145, 152, 947 A.2d 282 (2008). . . .

"We begin with a review of the relevant statutes. Section 46b-129 (a) provides in relevant part that certain enumerated parties having information that a child or youth is neglected, uncared-for or dependent, may file with the Superior Court . . . a verified petition plainly stating such facts as bring the child or youth within the jurisdiction of the court as neglected, uncared-for or dependent, within the meaning of section 46b-120 . . . . General Statutes (Rev. to 2009) § 46b-120 (9), provides in relevant part that a *child or youth* may be found neglected . . . . General Statutes (Rev. to 2009) § 46b-120 (10), provides in relevant part that a *child or youth* may be found uncared for . . . . General Statutes (Rev. to 2009) § 46b-120 (1) provides in relevant part: Child means any person under sixteen years of age . . . . General Statutes (Rev. to 2009) § 46b-120 (2) provides in relevant part: [Y]outh means any person sixteen or seventeen years of age . . . .

"Reading these statutory provisions together, it is clear that the legislature intended that the trial court would have statutory authority to adjudicate a person neglected or uncared-for only if the person is a child or youth, i.e., the person is under the age of eighteen years. There is no indication in the statutory scheme that the legislature contemplated that, as long as the

petition was filed before the subject of the petition reached his eighteenth birthday, the trial court could render a retroactive adjudication after that date. As the current revision of § 46b-120 (1) indicates, when the legislature intends that a person will be considered a child for certain purposes after the person has reached the age of eighteen years, it knows how to make that intention clear. See General Statutes § 46b-120 (1) (defining [c]hild differently for different circumstances). Accordingly, we conclude that the trial court lacked statutory authority to adjudicate the petitioner neglected or uncared-for after his eighteenth birthday. It necessarily follows that the trial court lacked statutory authority to provide the petitioner with dispositional relief pursuant to § 46b-129 (j) ([u]pon finding and adjudging that any child or youth is uncared-for, neglected or dependent, the court may commit such child or youth to the Commissioner of Children and Families . . .).

"Finally, we conclude that, because the trial court lacked such statutory authority, that court properly concluded that the petitioner's petition was rendered moot when he reached his eighteenth birthday. See *Connecticut Coalition Against Millstone* v. *Rocque*, 267 Conn. 116, 126–27, 836 A.2d 414 (2003) (case is moot when [i]ntervening circumstances have changed the legal landscape . . . and the court cannot grant the [petitioner] any practical relief); see also *Dept. of Public Safety* v. *Freedom of Information Commission*, 103 Conn. App. 571, 589, 930 A.2d 739 (because Freedom of Information Commission lacks statutory authority to issue final decision on matter that is not contested, question of whether certain documents were subject to Freedom of Information Act was rendered moot when party making request for disclosure notified commission that requested records had been disclosed and asked that no further action be taken on complaint), cert. denied, 284 Conn. 930, 934 A.2d 245 (2007); *Ruggiero* v. *Ruggiero*, 76 Conn. App. 338, 347, 819 A.2d 864 (2003) (because trial court no longer had statutory authority to order plaintiff to submit to psychiatric evaluation after custody order was issued, claim that trial court improperly ordered psychiatric evaluation was moot). Accordingly, we conclude that the trial court properly granted the department's motion to dismiss and affirm the judgment of the Appellate Court on this alternative ground." (Emphasis altered; footnotes omitted; internal quotation marks omitted.) *In re Jose B.*, supra, 303 Conn. 580–83.

In *In re Jessica M.*, supra, 303 Conn. 585, the petitioner claimed that the trial court improperly dismissed as moot her petition to be adjudicated neglected and uncared-for because two and one-half months after she filed it, she reached her eighteenth birthday. Our Supreme Court, however, specifically rejected her claim that "because an adjudication of neglect pursuant to

§ 46b-129 (a) would enable her to seek special immigrant juvenile status from the federal government, her claim for an adjudication of neglect was not moot even if the trial court could not grant dispositional relief pursuant to § 46b-129 (j)." Id., 588. The court concluded that, "not only did the trial court lack statutory authority to provide dispositional relief to the petitioner after she reached her eighteenth birthday, it also lacked statutory authority to adjudicate the petitioner neglected or uncared-for. The collateral consequences doctrine cannot confer statutory authority on the trial court that is otherwise lacking." Id., 588–89. Accordingly, the court rejected the petitioner's claim. Id., 589.

*In re Jose B.* and *In re Jessica M.* are controlling,[5] and we are constrained to follow their holdings in analyzing and applying the relevant statutes in this case. The plain language of those statutes, particularly § 45a-608n, do not provide the Probate Court with authority either to appoint a guardian for an individual after his or her eighteenth birthday, or to make juvenile status findings after such eighteenth birthday.[6] The Superior Court for Juvenile Matters thus properly concluded that the claims set forth in the appeals from the decisions of the Probate Court were rendered moot when Henrry reached his eighteenth birthday because the Probate Court no longer had the statutory authority to provide the requested relief.

For the foregoing reasons, we affirm the judgments of the Superior Court for Juvenile Matters dismissing the appeals.

The appeals judgments are affirmed.

In this opinion MULLINS, J., concurred.

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79a-12, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

** February 24, 2017, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] In the second brief to this court, filed after the Probate Court hearing on the petitions had occurred and the judgment of that court had been rendered, the petitioner and Henrry set forth the following supplemental statement of principal issues on appeal:

"1. Do Connecticut courts possess authority to afford the [petitioner and Henrry] practical relief by making [juvenile status] findings in these proceedings?

"2. Did the Probate Court err in denying [the petitioner's] Petition for Special Immigrant Juvenile Status Findings and in refusing to make the findings under . . . § 45a-608n?

"3. Did the Probate Court err in failing to appoint a coguardian for Henrry as requested by [the petitioner] and [the department] when it denied [her] Petition to Remove Guardian, but affirmed her as the sole guardian?

"4. In light of these legal errors by the Probate Court, does the Juvenile Court possess jurisdiction to hear this matter de novo and make the [juvenile status] findings?"

The statement of principal issues in the first brief to this court was as follows:

"1. Did the Juvenile Court err in concluding that it lacked jurisdiction to hear an appeal from Probate Court because Henrry had turned eighteen, when the legal issues presented to the Juvenile Court involved the Probate

Court's interpretation of the 2014 [juvenile status] findings statute . . . § 45a-608n (b), and the denial of a hearing prior to Henrry's eighteenth birthday; and

"2. Did the Probate Court err in its interpretation of the 2014 [juvenile status] findings statute . . . § 45a-608n (b), when it denied the [petitioner's] Emergency Petition for [juvenile status] findings on the grounds that 'the granting of a petition to remove is a prerequisite to making the requested written findings'; and

"3. Did the Probate Court violate due process under U.S. Const. Amend. XIV and Art. First §§ 8 and 10 of the Connecticut Constitution, when it denied the [petitioner] a hearing on the Petition for Removal of Guardianship/ Appointment of Coguardian for Henrry, and on the Petition for [juvenile status] findings, despite repeated requests by the [petitioner] for an opportunity to be heard prior to Henrry's eighteenth birthday; and

"4. Did the Probate Court abuse its discretion when it denied the [petitioner's] Motion for Waiver of Study by the Department of Children and Families, without a hearing, when it was clear that the completion of such a study would only occur after Henrry's eighteenth birthday, and when the [petitioner] had requested a hearing on [juvenile status] findings prior to Henrry's eighteenth birthday;

"5. In light of these legal errors by the Probate Court, did the Juvenile Court possess jurisdiction to hear the matter de novo, or remand the matter to the Probate Court for a hearing, and, if appropriate, to enter a nunc pro tunc order on the petition for [juvenile status] findings pursuant to its statutory, incidental, and equitable jurisdiction, notwithstanding that Henrry had turned eighteen;

"6. Did this appeal [in AC 39276] become moot when on July 19, 2016, subsequent to the filing of this appeal, and after Henrry's eighteenth birthday, the Probate Court held a hearing on the legal and substantive issues?"

[2] General Statutes § 45a-608n, as amended by No. 15-14, § 11, of the 2015 Public Acts, provides: "(a) For the purposes of this section and section 45a-608o, a minor child shall be considered dependent upon the court if the court has (1) removed a parent or other person as guardian of the minor child, (2) appointed a guardian or coguardian for the minor child, (3) terminated the parental rights of a parent of the minor child, or (4) approved the adoption of the minor child.

"(b) At any time during the pendency of a petition to remove a parent or other person as guardian under section 45a-609 or 45a-610, or to appoint a guardian or coguardian under section 45a-616, a party may file a petition requesting the Probate Court to make findings under this section to be used in connection with a petition to the United States Citizenship and Immigration Services for designation of the minor child as having special immigrant juvenile status under [8 U.S.C. § 1101 (a) (27) (J) (2012)]. The Probate Court shall cause notice of the hearing on the petition to be given by first class mail to each person listed in subsection (b) of section 45a-609, and such hearing may be held at the same time as the hearing on the underlying petition for removal or appointment. If the court grants the petition to remove the parent or other person as guardian or appoint a guardian or coguardian, the court shall make written findings on the following: (1) The age of the minor child; (2) the marital status of the minor child; (3) whether the minor child is dependent upon the court; (4) whether reunification of the minor child with one or both of the minor child's parents is not viable due to any of the grounds set forth in subdivisions (2) to (5), inclusive, of section 45a-610; and (5) whether it is not in the best interests of the minor child to be returned to the minor child's or parent's country of nationality or last habitual residence.

"(c) If the court has previously granted a petition to remove a parent or other person as guardian under section 45a-609 or 45a-610 or to appoint a guardian or coguardian under section 45a-616, a parent, guardian or attorney for the minor child may file a petition requesting that the court make findings under this section to be used in connection with a petition to the United States Citizenship and Immigration Services for designation of the minor child as having special immigrant juvenile status under [8 U.S.C. § 1101 (a) (27) (J) (2012)]. The court shall cause notice of the hearing on the petition to be given by first class mail to each parent, guardian and attorney for the minor child, to the minor child if the minor child is twelve years of age or older and to other persons as the court determines. The court shall make written findings on the petition in accordance with subsection (b) of this section."

General Statutes § 45a-610 provides in relevant part: "If the Court of

Probate finds that notice has been given or a waiver has been filed, as provided in section 45a-609, it may remove a parent as guardian, if the court finds by clear and convincing evidence one of the following: (1) The parent consents to his or her removal as guardian; or (2) the minor child has been abandoned by the parent in the sense that the parent has failed to maintain a reasonable degree of interest, concern or responsibility for the minor child's welfare; or (3) the minor child has been denied the care, guidance or control necessary for his or her physical, educational, moral or emotional well-being, as a result of acts of parental commission or omission, whether the acts are the result of the physical or mental incapability of the parent or conditions attributable to parental habits, misconduct or neglect, and the parental acts or deficiencies support the conclusion that the parent cannot exercise, or should not in the best interests of the minor child be permitted to exercise, parental rights and duties at the time; or (4) the minor child has had physical injury or injuries inflicted upon the minor child by a person responsible for such child's health, welfare or care, or by a person given access to such child by such responsible person, other than by accidental means, or has injuries which are at variance with the history given of them or is in a condition which is the result of maltreatment such as, but not limited to, malnutrition, sexual molestation, deprivation of necessities, emotional maltreatment or cruel punishment; or (5) the minor child has been found to be neglected or uncared for, as defined in section 46b-120. . . ."

[3] For example, the factors set forth in §§ 45a-610 and 45a-617 illustrate the necessity for the mandated inspection and report in this case. Section 45a-610 provides in relevant part: "If the Court of Probate finds that notice has been given or a waiver has been filed, as provided in section 45a-609, it may remove a parent as guardian, if the court finds by clear and convincing evidence one of the following: (1) The parent consents to his or her removal as guardian; or (2) the minor child has been abandoned by the parent in the sense that the parent has failed to maintain a reasonable degree of interest, concern or responsibility for the minor child's welfare; or (3) the minor child has been denied the care, guidance or control necessary for his or her physical, educational, moral or emotional well-being, as a result of acts of parental commission or omission, whether the acts are the result of the physical or mental incapability of the parent or conditions attributable to parental habits, misconduct or neglect, and the parental acts or deficiencies support the conclusion that the parent cannot exercise, or should not in the best interests of the minor child be permitted to exercise, parental rights and duties at the time; or (4) the minor child has had physical injury or injuries inflicted upon the minor child by a person responsible for such child's health, welfare or care, or by a person given access to such child by such responsible person, other than by accidental means, or has injuries which are at variance with the history given of them or is in a condition which is the result of maltreatment such as, but not limited to, malnutrition, sexual molestation, deprivation of necessities, emotional maltreatment or cruel punishment; or (5) the minor child has been found to be neglected or uncared for, as defined in section 46b-120. . . ." Section 45a-617 provides that "[w]hen appointing a guardian, coguardians or permanent guardian of the person of a minor, the court shall take into consideration the following factors: (1) The ability of the prospective guardian, coguardians or permanent guardian to meet, on a continuing day to day basis, the physical, emotional, moral and educational needs of the minor; (2) the minor's wishes, if he or she is over the age of twelve or is of sufficient maturity and capable of forming an intelligent preference; (3) the existence or nonexistence of an established relationship between the minor and the prospective guardian, coguardians or permanent guardian; and (4) the best interests of the child." Additionally, the petitioner represented in her petition for removal of Henrry's father as guardian that Henrry had been abandoned by his father in the sense that he had failed to maintain a reasonable degree of interest, concern or responsibility for Henrry's welfare; that Henrry had been denied the care, guidance or control necessary for his physical, educational, moral, or emotional well-being as a result of acts of parental commission or omission as defined by law; and that Henrry was neglected or uncared for, as defined in § 46b-120.

Assuming, however, that the Probate Court should have waived the report and that it acted improperly in not doing so, e.g., it should have proceeded to determine if it could make the requisite guardianship and juvenile status findings prior to Henrry's eighteenth birthday, Henrry's eighteenth birthday now having occurred, there is no current judicial or statutory authority of which this court is aware upon which it, the Juvenile Court, or the Probate

Court could stop Henrry's age of majority clock from running so that he remained a juvenile, or turn back that clock after it had run on Henrry's juvenile status. In other words, there currently is no authority for this court to order either the Probate Court or the Juvenile Court to consider and rule upon the petitions for guardianship and juvenile status findings nunc pro tunc. Even if either court did so rule at this point, the validity of any such orders, in the absence of proper statutory authority, would be subject to question.

[4] General Statutes § 46b-129 (a) provides in relevant part: "Any selectman, town manager, or town, city or borough welfare department, any probation officer, or the Commissioner of Social Services, the Commissioner of Children and Families or any child-caring institution or agency approved by the Commissioner of Children and Families, a child or such child's representative or attorney or a foster parent of a child, having information that a child or youth is neglected, uncared for or abused may file with the Superior Court that has venue over such matter a verified petition plainly stating such facts as bring the child or youth within the jurisdiction of the court as neglected, uncared for or abused within the meaning of section 46b-120, the name, date of birth, sex and residence of the child or youth, the name and residence of such child's parents or guardian, and praying for appropriate action by the court in conformity with the provisions of this chapter. . . ."

[5] Moreover, this court recognized these jurisdictional limits for making a juvenile status finding when it directed the Juvenile Court to act in an expeditious manner on remand in *In re Pedro J. C.*, supra, 154 Conn. App. 543 ("If the court does not issue the requisite findings before the date that the petitioner attains the age of eighteen, the court will lack statutory authority to provide him his requested relief. See *In re Jessica M.*, [supra, 303 Conn. 587–88].")

[6] The legislature may provide statutory authority for the Probate Court or the Superior Court to make the juvenile status findings after a minor child reaches the age of majority. See *In re Jose B.*, supra, 303 Conn. 581 ("Reading these statutory provisions together, it is clear that the legislature intended that the trial court would have statutory authority to adjudicate a person neglected or uncared-for only if the person is a child or youth, i.e., the person is under the age of eighteen years. There is no indication in the statutory scheme that the legislature contemplated that, as long as the petition was filed before the subject of the petition reached his eighteenth birthday, the trial court could render a 'retroactive' adjudication after that date. As the current revision of § 46b-120 (1) indicates, when the legislature intends that a person will be considered a child for certain purposes after the person has reached the age of eighteen years, it knows how to make that intention clear.").