******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************************

## IN RE HENRRY P. B.-P.*
## (SC 19907)

Rogers, C. J., and Palmer, Eveleigh, McDonald, Robinson and Espinosa, Js.**

*Syllabus*

Pursuant to statute (§ 45a-608n [b]), "[a]t any time during the pendency of a petition . . . to appoint a guardian or coguardian . . . a party may file a petition requesting the Probate Court to make findings . . . to be used in connection with a petition [for] special immigrant juvenile status under [federal law]."

H, a minor child, traveled from Honduras, where his life was threatened, to the United States in order to seek refuge with his mother, the petitioner, who lives in Connecticut. Five weeks before H's eighteenth birthday, the petitioner filed petitions seeking, inter alia, the appointment of a coguardian and juvenile status findings pursuant to § 45a-608n (b) so that H could obtain special immigrant status and avoid potential deportation. The Probate Court then scheduled a hearing on a date after H's eighteenth birthday and ordered the Department of Children and Families to conduct a study related to the guardianship petition. Shortly before H's birthday, the petitioner filed an emergency petition for findings under § 45a-608n (b), which the Probate Court denied. Thereafter, the petitioner and H appealed to the Superior Court from certain of the Probate Court's rulings, including the denial of the emergency petition. The Superior Court dismissed the appeal for lack of subject matter jurisdiction on the ground that H was no longer a minor, and the petitioner and H appealed to the Appellate Court. While that appeal was pending, the Probate Court issued a final decision denying the petitions seeking appointment of a coguardian and juvenile status findings pursuant to § 45a-608n (b) on the ground that H was no longer a minor. The petitioner and H then appealed from the Probate Court's final decision to the Superior Court, which dismissed that appeal. Thereafter, the petitioner and H filed a second appeal with the Appellate Court, which consolidated the two appeals. The Appellate Court affirmed the judgments of the Superior Court dismissing the probate appeals, concluding that the Probate Court lacked authority to appoint a coguardian and to make juvenile status findings under § 45a-608n (b) because H had reached the age of eighteen. On the granting of certification, the petitioner and H appealed to this court. *Held* that the Appellate Court improperly affirmed the Superior Court's judgments dismissing the probate appeals, this court having concluded that the Probate Court was not divested of authority to make juvenile status findings under § 45a-608n (b) after H reached the age of eighteen during the pendency of the underlying proceeding: although the text of § 45a-608n (b) requires juvenile status findings upon the granting of certain guardianship petitions, there was no statutory language expressly conditioning the Probate Court's authority to make such findings on the granting of such a petition; moreover, adding such restrictive language would be inconsistent with the maxim that this court does not read language into statutes and with the statutory (§ 45a-605 [a]) directive favoring a liberal construction of § 45a-608n, recognizing the authority to make findings under such circumstances was consistent with the overarching purpose of § 45a-608n, which is to facilitate access to the state court findings necessary for federal juvenile status petitions, which must be filed with federal immigration authorities before a child's twenty-first birthday, and the legislative history of § 45a-608n counseled in favor of a broader reading of the statute as to those persons eligible to obtain predicate state court findings necessary to render available the federal immigration benefits of juvenile status.

Argued September 20—officially released December 14, 2017***

*Procedural History*

Appeal from the decision by the Hartford Regional Children's Probate Court setting a hearing date on the

petition filed by the petitioner for removal of guardian and appointment of guardian and denying the emergency petition filed by the petitioner for special immigrant juvenile status findings as to the petitioner's minor child, Henrry P. B.-P., brought to the Superior Court in the judicial district of Hartford, Juvenile Matters, where the court, *Dannehy, J.*, rendered judgment dismissing the appeal, from which the petitioner and Henrry P. B.-P. filed an appeal with the Appellate Court; thereafter, appeal by the petitioner and Henrry P. B.-P. from the decisions of the Hartford Regional Children's Probate Court denying the petitioner's petitions for removal of guardian, appointment of guardian and for special immigrant juvenile status findings as to Henrry P. B.-P., brought to the Superior Court in the judicial district of Hartford, Juvenile Matters, where the court, *Burgdorff, J.*, rendered judgment dismissing the appeal, from which the petitioner and Henrry P. B.-P. appealed to the Appellate Court, which consolidated the appeals; subsequently, the Appellate Court, *Mullins* and *Bear, Js.*, with *Lavine, J.*, dissenting, affirmed the judgments of the trial court, and the petitioner and Henrry P. B.-P., on the granting of certification, appealed to this court. *Reversed; further proceedings.*

*Enelsa Diaz*, with whom were *Giovanna Shay*, and, on the brief, *Charles D. Ray* and *Brittany A. Killian*, for the appellants (petitioner et al.)

*Edwin D. Colon* and *Jay E. Sicklick* filed a brief for the Center for Children's Advocacy, Inc., et al., as amici curiae.

*James Worthington* and *Kevin P. Broughel* filed a brief for Kids in Need of Defense as amicus curiae.

*Opinion*

ROBINSON, J. In this certified appeal, we consider whether the Probate Court retains the statutory authority to make findings pursuant to General Statutes § 45a-608n (b)[1] in connection with a petition for special immigrant juvenile status (juvenile status) under 8 U.S.C. § 1101 (a) (27) (J),[2] when the minor child who is the subject of the petition reaches the age of eighteen years old during the pendency of the petition. The petitioner, Reyna P. A., and her son, Henrry P. B.-P., appeal, upon our grant of their petition for certification,[3] from the judgment of the Appellate Court, which affirmed the judgments of the Superior Court for Juvenile Matters dismissing their appeals from the decisions of the Probate Court. *In re Henrry P. B.-P.*, 171 Conn. App. 393, 415, 156 A.3d 673 (2017). We agree with their dispositive claim in this appeal, and conclude that the Probate Court did not lose its authority to make juvenile status findings pursuant to § 45a-608n (b) when Henrry turned eighteen years old during the pendency of the petition. Accordingly, we reverse the judgment of the Appellate Court.

The record and the opinion of the Appellate Court set forth the relevant facts and procedural history. "[The petitioner] and her two . . . children, Henrry and [his sister], are from Honduras. After her husband and father-in-law were brutally murdered by the same group of individuals, [the petitioner] fled Honduras, seeking safety in the United States and leaving her two minor children behind with their paternal grandmother because they were too young to make the treacherous journey into the [United States]. As the children grew into adolescents, the threats against them began to escalate as well. . . . Eventually, fearing for their lives, [Henrry and his sister], unbeknownst to relatives, decided to embark on their own journey into the United States to find their mother and seek refuge. . . .

"Upon entering the United States in 2015, Henrry and [his sister] were detained by Immigration Customs and Border Patrol and then ultimately released to [the petitioner] in Connecticut. They were seventeen and sixteen years old at that time. Since arriving in Connecticut, both minors have resided with [the petitioner] and the proposed coguardian in this case, [Santos O. R.], and have been enrolled in . . . high school, where Henrry recently completed tenth grade. . . . Both [the petitioner] and [Santos] work full-time to support the needs of Henrry and his [sister]. . . .

"On March 1, 2016, approximately five weeks prior to Henrry's eighteenth birthday, [the petitioner], through counsel, initiated the underlying [action in the Probate Court]. On that date, she filed a petition for removal of guardian, to remove her minor children's father as guardian and affirm herself as guardian, and addition-

ally seeking the appointment of [Santos] as] coguardian. . . . On that date, she also filed a petition for [juvenile status findings] pursuant to § 45a-608n, to be used in connection with an application to the United States Citizenship and Immigration Services [Immigration Services]. . . . Finally, on that date, [the petitioner] filed a motion for waiver of study by the Department of Children and Families [department] for Henrry, notifying the Probate Court that Henrry would be turning eighteen in approximately five weeks, and that time was of the essence." (Internal quotation marks omitted.) Id., 396–97.

" 'On March 23, 2016, the Probate Court issued its first order of notice of hearing in this case indicating that the matter was being set down for a hearing with "no appearance necessary" by the parties on April 22, 2016, a date after Henrry's eighteenth birthday. . . . The Probate Court also [sent notice to] a [department] social work supervisor, ordering [the department] to complete a study for both minors on the petition for removal, and impliedly denying [the petitioner's] motion for the waiver of study by [the department] for Henrry. . . .

" 'On April 1, 2016, with Henrry's eighteenth birthday closely approaching, with no [department] study and no hearing date, [the petitioner] filed an emergency petition for findings under § 45a-608n . . . . In her motion, [the petitioner] requested that the court make findings in connection with her petition for [juvenile status] findings, or, in the alternative, hold an emergency hearing before Henrry's eighteenth birthday, in order to do so. . . . The attorney for the child, appointed by the Probate Court, Attorney Frank Twohill, having received a copy of the [e]mergency [p]etition, visited with the child and wrote a letter to the court indicating both his support for the [emergency petition], and his availability for an evidentiary hearing . . . should the court choose to hold one. . . .

" 'On April 1, 2016, the Probate Court . . . denied the emergency petition in a brief written order, indicating [as follows]: "The [e]mergency [p]etition for [f]indings under [§] 45a-608n, dated April 1, 2016, is hereby [denied] by the court. Pursuant to [§] 45a-608n (b), the granting of a petition to remove is a prerequisite to making the requested written findings." . . . Henrry subsequently turned eighteen a few days later, before any hearing was ever held in the Probate Court.

" 'On April 22, 2016, [the petitioner] and Henrry . . . jointly filed an appeal to the Superior Court . . . pursuant to [General Statutes § 45a-186 (a)] and Practice Book § 10-76 (a), appealing both the March 23, 2016 order, setting a "no appearance" hearing after Henrry's eighteenth birthday and impliedly denying [the petitioner's] motion for waiver of the study by [the department], and the April 1, 2016 order, denying the emergency

petition for findings under [§] 45a-608n. . . . The [Superior] Court set the matter down for a hearing on May 19, 2016, and another attorney was appointed for Henrry as attorney for the minor child. . . .

" 'On May 19, 2016, the [Superior] Court . . . dismissed the appeal from Probate Court on the record, without holding an evidentiary hearing, stating that the [Superior] Court lacked jurisdiction over the appeal, because Henrry was now eighteen years old. . . . [The petitioner] and Henrry filed [their first appeal] with [the Appellate Court] on June 2, 2016. . . .

" 'On May 31, 2016 . . . approximately eight weeks after Henrry's eighteenth birthday, [the department] completed its social study on both Henrry and his sister . . . and provided its report to the Probate Court. In its report, [the department] indicated its support for the pending petitions, asking that the court grant the petition to remove the father as guardian, to affirm [the petitioner] as guardian, and to appoint [Santos] as coguardian of Henrry and his [sister]. . . .

" 'On June 3, 2016, the Probate Court issued another order for notice of hearing, this time scheduling an actual hearing date for the underlying petitions for July 19, 2016, but the hearing was set down for [Henrry's sister] . . . and not for Henrry. . . . On June 22, 2016, [the petitioner] filed a motion to schedule hearing or for a dispositive order in Henrry's case. . . . The Probate Court responded to the motion by scheduling a hearing on the underlying petitions for Henrry on July 19, 2016, along with that of his younger sister . . . .

" 'On July 19, 2016, the Probate Court held a full hearing for both Henrry and his sister, first entertaining legal argument from counsel on the jurisdictional issue regarding Henrry's case, [given] that he [was] eighteen, and then taking testimony on the substantive issues from all the interested parties. The matter was then taken under advisement . . . .'

"On August 30, 2016, the Probate Court mailed its decision affirming the petitioner as sole guardian, but denying her petition for removal of the father as guardian and the appointment of Santos . . . as coguardian of Henrry because Henrry was eighteen years old and no longer a minor child. It declined to make the requested juvenile status findings, also because Henrry was age eighteen and no longer a minor child. On September 26, 2016, the petitioner and Henrry filed a second appeal to the Superior Court . . . from the Probate Court's August 30, 2016 decision, and on November 1, 2016, that appeal was dismissed. On November 4, 2016, the petitioner and Henrry [filed a second appeal to the Appellate Court]." Id., 398–401. The Appellate Court then consolidated the two appeals. Id., 401.[4]

In considering whether the Probate Court had the authority to grant the relief sought by the petitioner

and Henrry, the Appellate Court reviewed numerous provisions in "chapter 802h of the General Statutes, which pertains to protected persons, including minors or minor children."[5] Id., 403–404. The Appellate Court stated as follows: "In this case . . . on the date the petitioner filed the petitions she, pursuant to [General Statutes] § 45a-606, was Henrry's sole guardian because his father was and had been deceased before [Henrry] arrived in the United States. There is no mention in that statute, in § 45a-608n, or in any other of the statutes in part II of chapter 802h, of any statutory authority granted to Connecticut courts to take action with respect to a person who has reached the age of majority. Section 45a-608n by its terms applies solely during the minority of any child." Id., 405. The Appellate Court further determined that the "plain language" of the statutes at issue, "particularly § 45a-608n, [does] not provide the Probate Court with authority either to appoint a guardian for an individual after his or her eighteenth birthday, or to make juvenile status findings after such eighteenth birthday." Id., 414.

Following two decisions from this court construing General Statutes § 46b-129; see *In re Jose B.*, 303 Conn. 569, 34 A.3d 975 (2012); *In re Jessica M.*, 303 Conn. 584, 35 A.3d 1072 (2012); along with one of its own decisions; see *In re Pedro J.C.*, 154 Conn. App. 517, 105 A.3d 943 (2014); the Appellate Court then deemed itself "constrained to conclude" that the present case was rendered moot "after Henrry reached the age of majority [because] the Probate Court lacked statutory authority to appoint a coguardian for him and to make the juvenile status findings permitted by § 45a-608n."[6] *In re Henrry P. B.-P.*, supra, 171 Conn. App. 410. Accordingly, over a dissent by Judge Lavine, the Appellate Court affirmed the Superior Court's judgments dismissing the probate appeals.[7] Id., 411–15. This certified appeal followed. See footnote 3 of this opinion.

On appeal, the petitioner and Henrry claim, inter alia, that the Appellate Court improperly determined that it was bound by our decisions in *In re Jose B.*, supra, 303 Conn. 582, and *In re Jessica M.*, supra, 303 Conn. 588–89, in concluding that the Probate Court lacked the authority to grant them the relief they sought after Henrry reached the age of majority. The petitioner and Henrry argue that those cases are distinguishable because they were not juvenile status cases but, rather, concerned whether the court had the statutory authority under § 46b-129 (a) and (j) to commit a person over the age of eighteen to the custody of the department. To this end, the petitioner and Henrry emphasize that *In re Jose B.* and *In re Jessica M.* predate the 2014 enactment of the § 45a-608n, the juvenile status findings statute, and that they do not seek Henrry's commitment to, or any services from, the department. We agree with the petitioner and Henrry, and conclude that the Probate Court did not lose its statutory authority to

make juvenile status findings pursuant to § 45a-608n after Henrry reached the age of majority during the pendency of the proceedings.[8]

In considering whether the Probate Court had the statutory authority to make juvenile status findings pursuant to § 45a-608n after Henrry reached the age of majority during the pendency of the proceedings, we are mindful that the "Probate Court is a court of limited jurisdiction prescribed by statute, and it may exercise only such powers as are necessary to the performance of its duties. . . . As a court of limited jurisdiction, it may act only when the facts and circumstances exist upon which the legislature has conditioned its exercise of power. . . . Such a court is without jurisdiction to act unless it does so under the precise circumstances and in the manner particularly prescribed by the enabling legislation." (Citations omitted; internal quotation marks omitted.) *Heussner* v. *Hayes*, 289 Conn. 795, 802–803, 961 A.2d 365 (2008); see also *In re Bachand*, 306 Conn. 37, 59–61, 49 A.3d 166 (2012) (Probate Court's limited jurisdiction creates constraints over its authority, even with respect to matter over which Superior Court has concurrent jurisdiction). Thus, whether the Probate Court had jurisdiction to render the decree challenged by the commissioner presents a question of statutory interpretation. See *In re Bachand*, supra, 42. Consequently, whether the Probate Court had the statutory authority to provide the relief requested presents a question of law over which our review is plenary.[9] See, e.g., *In re Jose B.*, supra, 303 Conn. 580.

"When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . . The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation." (Internal quotation marks omitted.) *Gonzalez* v. *O & G Industries, Inc.*, 322 Conn. 291, 302–303, 140 A.3d 950 (2016).

We begin with the language of § 45a-608n (b), which provides: "*At any time during the pendency of a petition to remove a parent or other person as guardian under section 45a-609 or 45a-610, or to appoint a guardian or coguardian under section 45a-616, a party may file a petition requesting the Probate Court to make findings under this section to be used in connection with a petition to . . . Immigration Services for designation of the minor child as having special immigrant juvenile status under* [*8 U.S.C. § 1101 (a) (27) (J)*]. The Probate Court shall cause notice of the hearing on the petition to be given by first class mail to each person listed in subsection (b) of section 45a-609, and such hearing *may be held* at the same time as the hearing on the underlying petition for removal or appointment. *If the court grants the petition to remove the parent or other person as guardian or appoint a guardian or coguardian, the court shall make written findings on the following*: (1) The age of the minor child; (2) the marital status of the minor child; (3) whether the minor child is dependent upon the court; (4) whether reunification of the minor child with one or both of the minor child's parents is not viable due to any of the grounds sets forth in subdivisions (2) to (5), inclusive, of section 45a-610; and (5) whether it is not in the best interests of the minor child to be returned to the minor child's or parent's country of nationality or last habitual residence."[10] (Emphasis added.)

As the Appellate Court observed, the text of § 45a-608n (b) seemingly applies only to persons under the age of eighteen, insofar as it speaks to various court actions, such as the removal or appointment of guardians, or termination of parental rights, with respect to the "minor child," a term specifically defined by General Statutes § 45a-604 (4) to mean "a person under the age of eighteen . . . ." See *In re Henry P. B.-P.*, supra, 171 Conn. App. 404; see also General Statutes § 45a-604 (5) ("'[g]uardianship' means guardianship of the person of a minor"). The authority conferred by § 45a-608n (b) with respect to the juvenile status findings specifically also reasonably may be read to be limited to persons under eighteen years old, insofar as it expressly requires the court to make those findings upon the grant of the "petition to remove the parent or other person as guardian or appoint a guardian or coguardian"— thus plausibly suggesting, consistent with the Probate Court's reading of the statute, that such a grant is a prerequisite to the juvenile status findings.

There is, however, another reading of the statute that is at least equally as reasonable; we, therefore, resort to extratextual sources to aid our construction of § 45a-608n (b). First, the petition for juvenile status findings may be filed "at any time during the pendency of a petition to remove a parent or other person as guardian" under General Statutes §§ 45a-609 or 45a-610, or during

the pendency of a petition "to appoint a guardian or coguardian" under General Statutes § 45a-616. General Statutes § 45a-608n (b). The statute is similarly flexible with respect to the timing of the hearing on the juvenile status petition, insofar as it need not be held at the same time as the underlying petition. See General Statutes § 45a-608n (b) ("such hearing *may be held* at the same time as the hearing on the underlying petition for removal or appointment" [emphasis added]). Finally, the statute reasonably may be read merely to require the Probate Court to make the written findings with respect to juvenile status upon the grant of the underlying guardianship petitions, but not limit its authority to make such findings to cases involving such grants, insofar as there is no language expressly conditioning the Probate Court's authority to make juvenile status findings on the grant of the underlying petition.

Indeed, reading § 45a-680n to add such restrictive language would run afoul of the well established maxim that, "[a]s a general matter, this court does not read language into a statute. . . . [W]e are bound to interpret legislative intent by referring to what the legislative text contains, not by what it might have contained." (Citation omitted; internal quotation marks omitted.) *State* v. *George J.*, 280 Conn. 551, 570, 910 A.2d 931 (2006), cert. denied, 549 U.S. 1326, 127 S. Ct. 1919, 167 L. Ed. 2d 573 (2017). Adding such a restriction also would be inconsistent with General Statutes § 45a-605 (a), in which the legislature directs that the statutory scheme that includes § 45a-608n "be liberally construed in the best interests of any minor child affected by them, provided the requirements of such sections are otherwise satisfied." Finally, the express mention of 8 U.S.C. § 1101 (a) (27) (J), the federal juvenile status statute, in § 45a-608n (b) calls to mind the maxim that, "[i]n cases in which more than one [statutory provision] is involved, we presume that the legislature intended [those provisions] to be read together to create a harmonious body of law . . . and we construe the [provisions], if possible, to avoid conflict between them." (Internal quotation marks omitted.) *Cardenas* v. *Mixcus*, 264 Conn. 314, 326, 823 A.2d 321 (2003); see also id., 322–23 ("[w]e presume that laws are enacted in view of existing relevant statutes . . . [and] we read each statute in a manner that will not thwart its intended purpose or lead to absurd results" [internal quotation marks omitted]).

Authorizing the Probate Court to make juvenile status findings with respect to a minor child who has turned eighteen years old during the pendency of the petition is entirely consistent with the overarching purpose of § 45a-608n (b), which is to facilitate our state courts' responsibilities with respect to juvenile status petitions brought to Immigration Services under 8 U.S.C. § 1101 (a) (27) (J), the federal statute that is expressly cited in the text of § 45a-608n (b). Given this statutory pur-

pose, a review of the federal statutory scheme is instructive. "Congress created [juvenile status] to permit immigrant children who have been abused, neglected, or abandoned by one or both of their parents to apply for lawful permanent residence while remaining in the United States. See [8 U.S.C. § 1101 (a) (27) (J) (2012)]; 8 C.F.R. § 204.11 (2009).[11] '[C]*hild' under the Federal statute is defined as an unmarried person under the age of twenty-one.* 8 U.S.C. § 1101 (b) (1) [2012]. Before an immigrant child can apply for [juvenile status], she must receive the following predicate findings from a 'juvenile court': (1) she is dependent on the juvenile court; (2) her reunification with one or both parents is not viable due to abuse, neglect, or abandonment; and (3) it is not in her best interests to return to her country of origin. 8 U.S.C. § 1101 (a) (27) (J) (i) [2012]. Once these special findings are made, an application and supporting documents may be submitted to [Immigration Services]. *An application for* [juvenile status] *must be submitted before the immigrant's twenty-first birthday.* 8 C.F.R. § 204.11 [2009]." (Emphasis added; footnotes added and omitted.) *Recinos* v. *Escobar*, 473 Mass. 734, 734–35, 46 N.E.3d 60 (2016).

"The [f]ederal statute requires a juvenile court to make special findings before an immigrant youth can apply for [juvenile status] and lawful permanent residence. . . . The [s]tate and [f]ederal proceedings are distinct from each other. The process for obtaining [juvenile status] is a unique hybrid procedure that directs the collaboration of state and federal systems. . . . Pursuant to 8 C.F.R. § 204.11, '[j]uvenile court' is defined as 'a court located in the United States having jurisdiction under [s]tate law to make judicial determinations about the custody and care of juveniles.' When determining which court qualifies as a juvenile court under the [f]ederal statute, it is the function of the [s]tate court and not the designation that is determinative."[12] (Citations omitted; footnote omitted; internal quotation marks omitted.) Id., 737–38; see *H.S.P.* v. *J.K.*, 223 N.J. 196, 209–11, 121 A.3d 849 (2015) (reviewing federal juvenile status statutes); see also *Marcelina M.-G.* v. *Israel S.*, 112 App. Div. 3d 100, 106–109, 973 N.Y.S.2d 714 (2013).

Significantly, although the federal implementing regulation, 8 C.F.R. § 204.11 (c), requires that the juvenile status "application must be submitted before the child's twenty-first birthday," federal law provides that "[t]he child will *not* 'age-out' of [juvenile status] on account of turning twenty-one while his or her application is under consideration with [Immigration Services]." (Emphasis added.) *Recinos* v. *Escobar*, supra, 473 Mass. 739, citing William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008, Pub. L. No. 110-457, § 235 (d) (6), 122 Stat. 5044.

Although the federal age cap for juvenile status,

namely, twenty-one years old, is greater than our state's relevant operative statutory definition of a minor child, namely, a person younger than eighteen years old; see General Statutes § 45a-604 (4); the legislative history of § 45a-608n further counsels in favor of a broader reading of that statute with respect to those persons eligible to obtain the predicate state court findings necessary to render available the federal immigration benefits of juvenile status. The legislature enacted § 45a-608n in Number 14-104, § 8, of the 2014 Public Acts.[13] Although floor debate about this provision was virtually nonexistent, our review of the testimony submitted to the Joint Standing Committee on the Judiciary in support of the bill ultimately enacted as § 45a-608n indicates that the legislature intended to address discrepancies in the state statutory scheme that were frustrating the availability of the federal immigration benefit. See, e.g., *Butts* v. *Bysiewicz*, 298 Conn. 665, 687, 5 A.3d 932 (2010) ("testimony before legislative committees may be considered in determining the particular problem or issue that the legislature sought to address by the legislation" [internal quotation marks omitted]). For example, Attorney Edwin Colon testified, on behalf of the Center for Children's Advocacy, that the proposed "statutory changes will provide children with increased access to protection under existing federal law [by] expressly authorizing the court to make these findings . . . ." Conn. Joint Standing Committee Hearings, Judiciary, Pt. 3, 2014 Sess., pp. 1221–22. Attorney Colon emphasized that the bill allowed children to file a motion seeking the necessary findings even after the issuance of a decree, and advised the legislature that it "should apply retroactively to any child who can still benefit from [juvenile status] federal protection." Id., p. 1222. Testifying in further support of the bill, Judge Paul Knierim, Probate Court Administrator, made clear his desire that the legislation be inclusive and "cautious." Id., pp. 904–907. Judge Knierim stated that "probate courts have been seeing [juvenile status] petitions under this statutory framework and the intent . . . would be to make it clear that Connecticut probate courts have legislative authorization when handling these types of children's matters to also make these findings."[14] Id., p. 906. Similarly, Megan R. Naughton, an immigration attorney in private practice, described to the legislature the necessity of using "the appropriate language . . . in the special findings" from the Probate Court in a case in which she had to refile for juvenile status shortly before her client turned twenty-one years old. Id., p. 1223. In the absence of clear and unambiguous statutory language to the contrary, we decline to frustrate the purpose of § 45a-608n, namely, to facilitate access to the state court findings necessary as a predicate step toward federal juvenile status, and we conclude that the Probate Court was not divested of statutory authority to make those findings when Henrry turned eighteen years old during the pendency of the petition.[15]

We disagree with the Appellate Court's conclusion that our decisions in *In re Jose B.*, supra, 303 Conn. 569, and *In re Jessica M.*, supra, 303 Conn. 584, dictate a contrary result. In *In re Jose B.*, the minor child filed a petition with the trial court pursuant to § 46b-129 (a), "seeking to have himself adjudicated as neglected and as an uncared-for youth," along with an order of temporary custody and an emergency commitment to the custody of the department. Id., 570–71. The trial court dismissed the petition as moot because "two days after he filed it, he reached his eighteenth birthday." Id., 571. On appeal, we determined that *In re Jose B.* presented the question of "whether the trial court has statutory authority pursuant to § 46b-129 (a) to adjudicate a person who has reached the age of eighteen years as neglected or uncared-for, and to commit such a person to the care of the department pursuant to § 46b-129 (j)." Id., 580.

Reading together the relevant statutory provisions, namely, § 46b-129 (a), and the definitions of "[c]hild" or "[y]outh" in General Statutes (Rev. to 2009) § 46b-120 (1) and (2), and "neglected" or "uncared for" in General Statutes (Rev. to 2009) § 46b-120 (9) and (10),[16] we concluded that "it is clear that the legislature intended that the trial court would have statutory authority to adjudicate a person neglected or uncared-for only if the person is a child or youth, i.e., the person is under the age of eighteen years. There is no indication in the statutory scheme that the legislature contemplated that, as long as the petition was filed before the subject of the petition reached his eighteenth birthday, the trial court could render a 'retroactive' adjudication after that date. As the [2009] revision of § 46b-120 (1) indicates, when the legislature intends that a person will be considered a child for certain purposes after the person has reached the age of eighteen years, it knows how to make that intention clear. See General Statutes [Rev. to 2009] § 46b-120 (1) (defining "'[c]hild'" differently for different circumstances). Accordingly . . . the trial court lacked statutory authority to adjudicate the petitioner neglected or uncared-for after his eighteenth birthday. It necessarily follows that the trial court lacked statutory authority to provide the petitioner with dispositional relief pursuant to § 46b-129 (j) . . . ." (Footnote omitted.) *In re Jose B.*, supra, 303 Conn. 581–82. We further concluded that, "because the trial court lacked such statutory authority, that court properly concluded that the petitioner's petition was rendered moot when he reached his eighteenth birthday." (Emphasis omitted.) Id., 582.

Similarly, in *In re Jessica M.*, supra, 303 Conn. 588, the companion case to *In re Jose B.*, this court rejected the petitioner's claim that "an adjudication of neglect pursuant to § 46b-129 (a) would enable her to seek . . . juvenile status from the federal government," meaning

that, under the collateral consequences doctrine, "her claim for an adjudication of neglect was not moot even if the trial court could not grant dispositional relief pursuant to § 46b-129 (j)." The court emphasized that, "not only did the trial court lack statutory authority to provide dispositional relief to the petitioner after she reached her eighteenth birthday, it also lacked statutory authority to adjudicate the petitioner neglected or uncared-for. The collateral consequences doctrine cannot confer statutory authority on the trial court that is otherwise lacking." Id., 588–89.

We agree with the petitioner and Henrry that *In re Jose B.* and *In re Jessica M.* are not controlling in the present appeal. We acknowledge that this court observed in *In re Jose B.* that the legislature can use a more expansive definition of the term "child" to broaden the court's statutory authority in certain areas; *In re Jose B.*, supra, 303 Conn. 581; which was a point that the Appellate Court found persuasive in the present case. See *In re Henrry P. B.-P.*, supra, 171 Conn. App. 412. Nevertheless, *In re Jose B.* and *In re Jessica M.* predate the enactment of § 45a-608n in 2014, with its specific grant of authority to make the findings factual incident to juvenile status and its express acknowledgment of the federal juvenile status scheme, which has age eligibility that extends beyond the age of eighteen years old that typically demarks the end of the court's authority over the guardianship of minors. Accordingly, the Appellate Court improperly deemed *In re Jose B.* and *In re Jessica M.* dispositive of the present case,[17] insofar as the Probate Court's authority to make the juvenile status findings under § 45a-608n does not terminate on the minor's eighteenth birthday.[18] The Appellate Court, therefore, improperly affirmed the judgments of the Superior Court dismissing the probate appeals.[19]

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to reverse the judgments of the Superior Court and to remand the case to the Superior Court for further proceedings according to law.

In this opinion the other justices concurred.

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79a-12, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

** The listing of justices reflects their seniority status on this court as of the date of oral argument.

*** December 14, 2017, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] General Statutes § 45a-608n (b) provides: "At any time during the pendency of a petition to remove a parent or other person as guardian under section 45a-609 or 45a-610, or to appoint a guardian or coguardian under section 45a-616, a party may file a petition requesting the Probate Court to make findings under this section to be used in connection with a petition to the United States Citizenship and Immigration Services for designation of the minor child as having special immigrant juvenile status under [8 U.S.C. § 1101 (a) (27) (J)]. The Probate Court shall cause notice of the hearing on the petition to be given by first class mail to each person listed

in subsection (b) of section 45a-609, and such hearing may be held at the same time as the hearing on the underlying petition for removal or appointment. If the court grants the petition to remove the parent or other person as guardian or appoint a guardian or coguardian, the court shall make written findings on the following: (1) The age of the minor child; (2) the marital status of the minor child; (3) whether the minor child is dependent upon the court; (4) whether reunification of the minor child with one or both of the minor child's parents is not viable due to any of the grounds sets forth in subdivisions (2) to (5), inclusive, of section 45a-610; and (5) whether it is not in the best interests of the minor child to be returned to the minor child's or parent's country of nationality or last habitual residence."

[2] Title 8 of the United States Code, § 1101 (a) (27), provides in relevant part as follows: "The term 'special immigrant' means . . .

"(J) an immigrant who is present in the United States—

"(i) who has been declared dependent on a juvenile court located in the United States or whom such a court has legally committed to, or placed under the custody of, an agency or department of a State, or an individual or entity appointed by a State or juvenile court located in the United States, and whose reunification with 1 or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law;

"(ii) for whom it has been determined in administrative or judicial proceedings that it would not be in the alien's best interest to be returned to the alien's or parent's previous country of nationality or country of last habitual residence; and

"(iii) in whose case the Secretary of Homeland Security consents to the grant of special immigrant juvenile status, except that—

"(I) no juvenile court has jurisdiction to determine the custody status or placement of an alien in the custody of the Secretary of Health and Human Services unless the Secretary of Health and Human Services specifically consents to such jurisdiction; and

"(II) no natural parent or prior adoptive parent of any alien provided special immigrant status under this subparagraph shall thereafter, by virtue of such parentage, be accorded any right, privilege, or status under this chapter . . . ."

[3] We granted the petition for certification to appeal from the judgment of the Appellate Court, limited to the following issue: "Did the Appellate Court properly affirm the Superior Court's dismissal of the petitioners' appeals on April 22, 2016, and September 26, 2016, from the Probate Court orders?" *In re Henrry P. B.-P.*, 325 Conn. 915, 159 A.3d 232 (2017).

[4] The Appellate Court clarified that the "consolidated appeal challenges first the interlocutory orders . . . and then the final orders . . . of the Probate Court. The appeal in AC 39276 challenges the denial of a hearing on [the petitioner's] petitions in Probate Court before Henrry turned eighteen, and the [Superior] Court's May 19, 2016 dismissal of the . . . appeal from [the Probate Court] . . . . The appeal in AC 39787 challenges the Probate Court's final orders denying [the petitioner's] petitions because Henrry had turned eighteen, which were appealed to the [Superior] Court . . . and dismissed on November 1, 2016." (Internal quotation marks omitted.) *In re Henrry P. B.-P.*, supra, 171 Conn. App. 401–402.

[5] In particular, the Appellate Court observed as follows: "Pursuant to General Statutes § 45a-604 (4), 'minor' or 'minor child' means a person under the age of eighteen. Pursuant to . . . § 45a-604 (5), 'guardianship' means guardianship of the person of a minor. Pursuant to General Statutes § 45a-606, the biological father and mother are joint guardians of the person of the minor, and the powers, rights, and duties of the father and the mother in regard to the minor are equal. If either the father or the mother dies or is removed as guardian, the other parent becomes the sole guardian of the person of the minor child." *In re Henrry P. B.-P.*, supra, 171 Conn. App. 404–405.

With respect to coguardianship, the Appellate Court discussed General Statutes § 45a-616. See id., 406–407. Section 45a-616 (b) provides in relevant part: "If any minor has a parent or guardian, who is the sole guardian of the person of the child, the court of probate for the district in which the minor resides may, on the application of the parent or guardian of such child or of the Commissioner of Children and Families with the consent of such parent or guardian and with regard to a child within the care of the commissioner, appoint one or more persons to serve as coguardians of the child. When appointing a guardian or guardians under this subsection, the court shall take into consideration the standards provided in section 45a-

617. . . .”

Section 45a-616 (b) refers to the standards set forth in General Statutes § 45a-617, which provides: “When appointing a guardian, coguardians or permanent guardian of the person of a minor, the court shall take into consideration the following factors: (1) The ability of the prospective guardian, coguardians or permanent guardian to meet, on a continuing day to day basis, the physical, emotional, moral and educational needs of the minor; (2) the minor’s wishes, if he or she is over the age of twelve or is of sufficient maturity and capable of forming an intelligent preference; (3) the existence or nonexistence of an established relationship between the minor and the prospective guardian, coguardians or permanent guardian; and (4) the best interests of the child. There shall be a rebuttable presumption that appointment of a grandparent or other relative related by blood or marriage as a guardian, coguardian or permanent guardian is in the best interests of the minor child.”

[6] The Appellate Court also addressed the delay in scheduling proceedings pursuant to General Statutes § 45a-609, which requires that a hearing on an application to remove a parent or parents as guardian to be held within thirty days of the application, or receipt of the report of the department’s investigation if ordered by the court pursuant to General Statutes § 45a-619. See *In re Henry P. B.-P.*, supra, 171 Conn. App. 408–409. The Appellate Court determined that the Probate Court’s referral of the matter to the commissioner for an investigation was mandatory under § 45a-619, based on the “classic neglect allegations” contained in the petition for the removal of Henrry’s father as guardian. Id., 408; see also id., 409 (“[t]he authority of the Probate Court to waive the investigation and report thus is limited to cases not involving allegations of abuse or neglect”). Thus, the Appellate Court concluded that, “[i]n light of the language of and the considerations raised in the relevant statutes, and Henrry’s relatively short time in Connecticut, the Probate Court’s decision not to waive the statutory requirement for an investigation and report was within its discretion.” Id.

[7] Judge Lavine issued a thoughtful and comprehensive opinion dissenting from the judgment of the Appellate Court, ultimately concluding that, “[b]y failing to hold an expedited hearing and timely rule on the petition seeking the removal of Henrry’s guardian and appointment of a coguardian, and the petition for special immigrant juvenile findings, as it was permitted to do by statute and its own rules, the Probate Court itself frustrated and undermined the legislative intent of this state’s special immigrant juvenile status findings statute . . . § 45a-608n, leading to the dismissal of the petitions. Moreover, by failing to hold an expedited hearing and to rule on the petitions prior to the day Henry turned eighteen, I believe that the Probate Court abused its discretion and thus violated the rights of the petitioner . . . and Henrry to due process under the fourteenth amendment to the United States constitution and article first, § 10, of the constitution of Connecticut. By failing to invoke its equitable jurisdiction to expedite the proceedings, the Probate Court potentially has caused Henrry and the petitioner irreparable harm by exposing Henrry to possible deportation to his country of nationality where he has been subject to death threats.” (Footnote omitted.) *In re Henry P. B.-P.*, supra, 171 Conn. App. 415–16; see also id., 428 (*Lavine, J.*, dissenting) (suggesting use of Supreme Court “supervisory authority . . . to incorporate an order that cases with similar time constraints be addressed on an expedited basis so as to ensure possible compliance with § 45a-608n [b]” [citation omitted]).

[8] The petitioner and Henrry also contend that, despite the fact that Henrry had reached the age of majority, the Superior Court retained jurisdiction to determine whether the Probate Court (1) had abused its discretion by not expediting its consideration of the petition, including waiving the investigation by the department pursuant to General Statutes § 45a-619, and (2) violated their rights to due process of law under the federal and state constitutions. They also ask us to utilize our supervisory power over the administration of justice to require the Probate Court and the Superior Court to handle petitions for juvenile status findings expeditiously. Given our conclusion with respect to the Probate Court’s continuing authority under § 45a-608n, we need not consider the merits of these other claims. But see footnote 19 of this opinion.

[9] A discussion of the overlapping jurisdiction of the Probate Court and the Superior Court with respect to petitions for juvenile status findings pursuant to § 45a-608n is set forth in footnotes 14 and 15 of this opinion.

[10] We note that § 45a-608n (a) provides: “For the purposes of this section and section 45a-608o, a minor child shall be considered dependent upon

the court if the court has (1) removed a parent or other person as guardian of the minor child, (2) appointed a guardian or coguardian for the minor child, (3) terminated the parental rights of a parent of the minor child, or (4) approved the adoption of the minor child."

Section 45a-608n (c) confers authority on the Probate Court and governs the procedure for making juvenile status findings for petitions filed after "the court has previously granted a petition to remove a parent or other person as guardian under section 45a-609 or 45a-610 or to appoint a guardian or coguardian under section 45a-616 . . . ."

[11] We note that the history and genealogy of the federal juvenile status statute since its original enactment in 1990 are set forth in greater detail in *Recinos* v. *Escobar*, 473 Mass. 734, 735–39, 46 N.E.3d 60 (2016), and *H.S.P.* v. *J.K.*, 223 N.J. 196, 208–209, 121 A.3d 849 (2015).

[12] "Because of the distinct expertise [s]tate courts possess in the area of child welfare and abuse, Congress has entrusted them with the responsibility to perform a best interest analysis and to make factual determinations about child welfare for purposes of [juvenile status] eligibility. . . . Therefore, the special findings a juvenile court makes should be limited to child welfare determinations. Immigration is exclusively a [f]ederal power. . . . It is not the juvenile court's role to engage in an immigration analysis or decision. . . . Special findings by a [s]tate court that determine that the child meets the eligibility requirements for [juvenile] status are not a final determination. . . . It is only the first step in the process to achieve [juvenile] status. . . . Once the child obtains the required special findings from a qualifying [s]tate court, the child may file an application with [Immigration Services]." (Citations omitted.) *Recinos* v. *Escobar*, supra, 473 Mass. 738–39.

[13] We note that the legislature subsequently made minor technical changes to § 45a-608n (c) in 2015. See Public Acts 2015, No. 15-14, § 11.

[14] In response to a jurisdictional question from Representative Rosa Rebimbas, Judge Knierim testified that the Superior Court has, "like the [Probate Court, been] seeing petitions [like] this and as a court of general jurisdiction, my understanding is that they wouldn't need specific statutory authority to exercise that jurisdiction" because "[t]he framework is available under federal law and because of the broad jurisdiction of [the Superior Court] they are able to make [these] findings." Conn. Joint Standing Committee Hearings, supra, p. 907.

[15] We note that the petitioner and Henrry rely on *In re Matthew F.*, 297 Conn. 673, 691–93, 4 A.3d 248 (2010), and argue further that § 45a-186, the probate appeal statute, conferred continuing jurisdiction upon the Superior Court, which was not divested solely because Henrry reached the age of majority, insofar as juvenile status relief remained available under § 45a-608n "at any time" during the pendency of the petition. Like Judge Lavine in his opinion dissenting from the judgment of the Appellate Court, we conclude that the Superior Court's authority tracked that of the Probate Court in this matter. See *In re Henry P. B.-P.*, supra, 171 Conn. App. 423–24. Specifically, we conclude that the Probate's Court's statutory authority under § 45a-680n (b) extends to the Superior Court, deciding a probate appeal pursuant to § 45a-186, insofar as "[w]hen entertaining an appeal from an order or decree of a Probate Court, the Superior Court takes the place of and sits as the court of probate. . . . In ruling on a probate appeal, the Superior Court exercises the powers, not of a constitutional court of general or common law jurisdiction, but of a Probate Court." (Citations omitted.) *Kerin* v. *Stangle*, 209 Conn. 260, 264, 550 A.2d 1069 (1988); see also id. ("[t]he function of the Superior Court in appeals from a Probate Court is to take jurisdiction of the order or decree appealed from and to try that issue de novo").

[16] We discussed the relevant statutes, noting: "Section 46b-129 (a) provides in relevant part that certain enumerated parties having information that a child or youth is neglected, uncared-for or dependent, may file with the Superior Court . . . a verified petition plainly stating such facts as bring the child or youth within the jurisdiction of the court as neglected, uncared-for or dependent, within the meaning of section 46b-120 . . . . General Statutes (Rev. to 2009) § 46b-120 (9), provides in relevant part that a *child or youth* may be found neglected. . . . General Statutes (Rev. to 2009) § 46b-120 (10), provides in relevant part that 'a *child or youth* may be found uncared for . . . . General Statutes (Rev. to 2009) § 46b-120 (1) provides in relevant part: Child means any person under sixteen years of age. . . . General Statutes (Rev. to 2009) § 46b-120 (2) provides in relevant part: [Y]outh means any person sixteen or seventeen years of age . . . ." *In re Jose B.*, supra, 303 Conn. 580–81.

[17] We note that, in *In re Pedro J.C.*, supra, 154 Conn. App. 543, the Appellate Court expedited proceedings on remand "to ensure that the requisite [juvenile status] findings can be made before . . . the petitioner's eighteenth birthday." In expediting proceedings on remand, the Appellate Court cited *In re Jessica M.*, supra, 303 Conn. 588, for the proposition that, "[i]f the court does not issue the requisite findings before the date that the petitioner attains the age of eighteen, the court will lack statutory authority to provide him his requested relief." *In re Pedro J.C.*, supra, 543 n.22. We note that the petition underlying *In re Pedro J.C.* was brought prior to the enactment of § 45a-608n (b). Accordingly, we overrule *In re Pedro J.C.* to the extent it stands for the proposition that, even when a petition is brought prior to the minor's eighteenth birthday, the minor's eighteenth birthday divests the court of its authority to make juvenile status findings.

[18] We emphasize that our conclusion in this opinion is limited to cases brought when the subject of the petition is under the age of eighteen years, given that § 45a-608n (b) contemplates proceedings with respect to guardianship of a minor. We do not consider in this appeal whether our courts have the authority to afford relief to a petitioner who is eighteen years old or older at the time the petition is filed, notwithstanding the "gap" that this creates with respect to the federal benefit. Cf. *Recinos* v. *Escobar*, supra, 473 Mass. 739–40 (equity jurisdiction of state probate and family court authorized it to consider juvenile status petition filed by twenty year old).

We acknowledge, however, that this "gap" created by state laws that restrict access to the courts for the preliminary findings may pose a significant obstacle to the availability of federal juvenile status relief. See *M.B.* v. *Quarantillo*, 301 F.3d 109, 115–16 (3d Cir. 2002) (Immigration Service district director's denial of consent to apply for juvenile status was not arbitrary and capricious when based, inter alia, on New Jersey "juvenile court's [eighteen] year age limitation," because "the statute and the regulation implicitly require an alien applying for special immigrant juvenile status to be young enough to qualify for a dependency order under state law"); *In re Guardianship of Guardado*, Docket No. 68524, 2016 WL 606034, *1–2 (Nev. February 12, 2016) (affirming dismissal of guardianship petition filed when subject was twenty years old in order to obtain predicate findings for juvenile status petition). This "gap" presents a public policy concern with respect to our state courts' role in the hybrid juvenile status system, and we urge the General Assembly to consider legislation to clarify our state courts' authority to provide relief in this area. See H. Knoespel, "Special Immigrant Juvenile Status: A 'Juvenile' Here Is Not a 'Juvenile' There," 19 Wash. & Lee J. Civil Rts. & Soc. Just. 505, 532 (2013) ("[T]he federal government has done its part to ensure age-out protections are in place. Accordingly, it is important for states to take action and set age-out protections for the part of the [juvenile status] process that the state controls. Because the federal government cannot infringe state sovereignty, state legislatures must act independently to extend juvenile court jurisdiction over all [juvenile status] eligible youth."); D. Page, "Closing the Age-Out Gap? Assessing Maryland's Recent Expansion of Equity Court Jurisdiction for Potential Special Immigrant Juveniles," 22 Geo. J. on Poverty L. & Policy 33, 40 (2014) (noting that "dissonance between state and federal law has the perverse effect of limiting [juvenile status] in many states to children under the age of eighteen and effectively guts a meaningful form of immigration relief for youth between the ages of eighteen and twenty-one in those same states"); J. Pulitzer, "Fear and Failing in Family Court: Special Immigrant Juvenile Status and the State Court Problem," 21 Cardozo J.L. & Gender 201, 215 (2014) ("[M]many [juvenile status]-eligible youths over eighteen, but younger than twenty-one, are prevented from even applying to [Immigration Services] because they lack access to local, family and/or juvenile state court. Even if the state court can be accessed, the child always runs the risk of 'aging out' of the family court's jurisdiction, thereby precluding the child from applying for [juvenile status]." [Footnote omitted.]); see also *Recinos* v. *Escobar*, supra, 473 Mass. 740 n.8 (describing legislative responses, including Md. Code Ann., Fam. Law § 1-201, which expanded definition of "child" to "unmarried individual under the age of twenty-one" with respect to juvenile status petitions); H. Knoespel, supra, 522–32 (describing legislative responses in Florida, Texas, New York, and California and endorsing amendment to Texas statute specifically addressing persons between ages of eighteen and twenty-one seeking juvenile status).

[19] Consistent with the suggestion of Judge Lavine in his dissenting opinion; see *In re Henry P. B.-P.*, supra, 171 Conn. App. 426–28; we note that the petitioner and Henrry ask us to exercise our supervisory authority over the

administration of justice to direct probate courts to handle applications for juvenile status findings pursuant to § 45a-608n expeditiously. Although we agree that probate courts should handle such petitions as rapidly as possible, we believe that our conclusion with respect to the breadth of § 45a-608n eases time constraints beyond those imposed by the federal filing deadline under 8 C.F.R. § 204.11 (c). Accordingly, we leave the promulgation of specific rules intended to expedite the handling of juvenile status petitions to the office of Probate Court Administration in the first instance.

———————————————————