******************************************************

    The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

    All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

    The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# IN RE PROBATE APPEAL OF MICHAEL NGUYEN
## (AC 42922)

Lavine, Alvord and Moll, Js.

*Syllabus*

The plaintiff appealed to the trial court from the decree of the Probate Court ordering his involuntary commitment to a psychiatric hospital for treatment of his psychiatric disabilities. The plaintiff had been admitted to the hospital pursuant to a physician's emergency certificate. Prior to the expiration of the certificate, the plaintiff signed a voluntary application to be admitted to the hospital as a patient, but, a few hours later, he gave the hospital three business days' notice in writing of his desire to leave. Four days later, the plaintiff's primary clinician filed on behalf of the hospital a petition in the Probate Court for the plaintiff's involuntary commitment to the hospital. That same day, the Probate Court, pursuant to the statute (§ 17a-498) that governs commitment hearings, appointed two psychiatrists to examine the plaintiff and to report their findings to the court on a physician's certificate form. Following a hearing, at which a treating psychiatrist at the hospital and the appointed psychiatrists testified, the Probate Court issued a decree in which it found by clear and convincing evidence that the plaintiff had psychiatric disabilities and was gravely disabled and that a less restrictive placement was not available and ordered the plaintiff's commitment to the hospital for treatment. The plaintiff appealed from the decree to the trial court, which affirmed the Probate Court's decision, and the plaintiff appealed to this court. *Held*:

1. The plaintiff could not prevail on his claim that the Probate Court exceeded its statutory authority by involuntarily committing him because the hospital failed to comply with the notice requirements set forth in § 17a-498 (e); although the hospital staff failed to comply with certain notice requirements of that statute, that failure did not nullify the statutory authority of the Probate Court to hold an involuntary commitment hearing, as the plain language of § 17a-498 does not condition the Probate Court's exercise of power.

2. Although the Probate Court improperly admitted into evidence a police report that documented an anonymous complaint that the plaintiff had told someone at his therapy group that he had homicidal fantasies, that evidentiary impropriety constituted harmless error, as the police report was admitted in reference to the issue of whether the plaintiff was a danger to others and the Probate Court found that he was not.

3. The plaintiff's claim that the Probate Court improperly admitted two physician's certificates into evidence because § 17a-498 (c) does not provide that sworn certificates by psychiatrists are evidence was unavailing; the plain and unambiguous meaning of § 17a-498 (c) dictates that the Probate Court must require, and therefore consider as evidence, the certificates of at least two physicians as a prerequisite to involuntarily committing a person, and it does not make sense that the Probate Court would be prohibited from considering those required certificates unless formally admitted into evidence.

4. The plaintiff could not prevail on his claim that the Probate Court's findings that he was gravely disabled and that a less restrictive placement was not available were clearly erroneous, arbitrary or capricious, characterized by an abuse of discretion, or a clearly unwarranted exercise of discretion, there having been substantial evidence in the record to support those findings; the Probate Court reasonably could have inferred from the substantial evidence, including the plaintiff's homicidal fantasies, persecutory delusions and objections to medication, that he was in danger of serious harm as a result of an inability to provide for his own basic needs and that he was incapable of determining whether to accept hospital treatment because his judgment was impaired.

Submitted on briefs April 6—officially released August 11, 2020

*Procedural History*

Appeal from the decree of the Probate Court for the district of Hartford ordering the involuntary commitment of the plaintiff to a psychiatric hospital, brought to the Superior Court in the judicial district of Hartford and tried to the court, *Scholl, J.*; judgment affirming the decision of the Probate Court, from which the plaintiff appealed to this court. *Affirmed.*

*Peter M. Van Dyke*, filed a brief for the appellant (plaintiff).

*Mitchell Lake* and *Rebecca M. Harris*, filed a brief for the appellees (defendant Kevin Cobb et al.).

*Opinion*

LAVINE, J. The plaintiff, Michael Nguyen (respondent), appeals from the judgment of the Superior Court affirming the decision of the Probate Court for the district of Hartford ordering the involuntary commitment of the respondent to The Institute of Living (institute) for treatment of his psychiatric disabilities. On appeal, the respondent claims that the Superior Court erred in determining that his substantial rights were not prejudiced when the Probate Court (1) lacked jurisdiction and exceeded its statutory authority because the institute failed to comply with the notice requirements of General Statutes § 17a-498 (e),[1] (2) improperly admitted a police report and two physician's certificates into evidence, and (3) entered an order that was clearly erroneous, arbitrary or capricious, characterized by an abuse of discretion, or a clearly unwarranted exercise of discretion because it was based on inadmissible evidence. We affirm the judgment of the Superior Court.

The record reveals the following facts and procedural history. The respondent was admitted to the institute on November 30, 2018, pursuant to a physician's emergency certificate (emergency certificate). On the morning of Friday, December 14, 2018, prior to the expiration of the emergency certificate, the respondent signed a voluntary application to be admitted as a patient in the institute, pursuant to General Statutes § 17a-506 (a),[2] whereby he agreed to abide by the rules and regulations of the institute and to give at least three business days' written notice if he wished to terminate his hospitalization before his discharge was ordered. A few hours later, the respondent completed a form, in which he gave the institute three business days' notice of his desire to leave.

On Tuesday, December 18, 2018, the defendant Kevin Cobb[3] (petitioner), a licensed clinical social worker and the respondent's primary clinician, filed on behalf of the institute a petition in the Probate Court for the respondent's involuntary commitment to the institute, alleging that the respondent "has psychiatric disabilities and is dangerous to himself or others or gravely disabled in the following respects . . . . [He] presented to the hospital upon concern over statements [that he] made in the community and the findings of several weapons and bomb making instructions at [his] home by [the] local police department. [The respondent] presents with symptoms that align with a psychotic disorder. Continuation of suspiciousness and paranoia toward both [institute] staff and peers remain consistent. [The respondent] feels he [does not] need medication. Further, [the respondent] misinterprets information as to be threatening. His judgment and insight are impoverished. The treatment team feels a longer period of hospitalization is needed at this time to further stabilize [him] on medication."

That same day, pursuant to § 17a-498 (c) (1), the Probate Court appointed two psychiatrists, Michael Nelken and Gregory Peterson (appointed physicians), to examine the respondent and to report their findings to the court on a physician's certificate.[4] Thereafter, the respondent filed a notice, also pursuant to § 17a-498 (c) (1), that he wished to cross-examine the appointed physicians at the scheduled commitment hearing.

The involuntary commitment hearing took place before the Probate Court on January 2, 2019. Peter Sugarman, a treating psychiatrist at the institute, and the appointed physicians testified. A police report from November 28, 2018, was admitted into evidence, which documented an anonymous complaint that the respondent had told someone at his mediation therapy group that he had homicidal fantasies. Following the hearing, the Probate Court issued a decree in which it found that the respondent was not a danger to others; however, it found by clear and convincing evidence that he was gravely disabled. The Probate Court also found that a less restrictive environment was not a viable option for the respondent because he remained under an order for involuntary medication and he was neither participating in his treatment plans nor was he communicating his intent to comply with the treatment plan upon discharge. Accordingly, the Probate Court ordered that the respondent be committed to the institute for the treatment of his psychiatric disabilities. The respondent appealed to the Superior Court from the January 4, 2019 decree of the Probate Court pursuant to General Statutes § 45a-186 et seq.[5] In that appeal, the respondent raised claims identical to those presently before this court. The Superior Court agreed with the respondent's claim that the admission of the police report as evidence in the Probate Court proceeding was improper but concluded that it constituted harmless error. The court rejected the respondent's other claims and affirmed the decision of the Probate Court. This appeal followed.

We begin with the standard of review applicable to probate appeals, which is set forth in General Statutes § 45a-186b. Section 45a-186b provides in relevant part: "[T]he Superior Court shall not substitute its judgment for that of the Probate Court as to the weight of the evidence on questions of fact. The Superior Court shall affirm the decision of the Probate Court unless the Superior Court finds that substantial rights of the person appealing have been prejudiced because the findings, inferences, conclusions or decisions are: (1) In violation of the federal or state constitution or the general statutes, (2) in excess of the statutory authority of the Probate Court, (3) made on unlawful procedure, (4) affected by other error of law, (5) clearly erroneous in view of the reliable, probative and substantial evidence on the whole record, or (6) arbitrary or capricious or characterized by abuse of discretion or clearly

unwarranted exercise of discretion. . . .” This standard of review also applies when an appeal from the decision of a Probate Court is taken to our appellate courts. See *DeNunzio* v. *DeNunzio*, 320 Conn. 178, 191, 128 A.3d 901 (2016); see also *Falvey* v. *Zurolo*, 130 Conn. App. 243, 256–57, 22 A.3d 682 (2011).

I

The respondent first claims that the Probate Court exceeded its statutory authority by involuntarily committing him because the institute failed to comply with the notice requirements set forth in § 17a-498 (e). Specifically, the respondent argues that, because there is no evidence that he was offered voluntary commitment status pursuant to §§ 17a-498 (e) and 17a-506, the Probate Court exceeded its statutory authority, and lacked jurisdiction, to conduct a commitment hearing. We disagree.

In addressing this claim, we are mindful that the “Probate Court is a court of limited jurisdiction prescribed by statute, and it may exercise only such powers as are necessary to the performance of its duties. . . . As a court of limited jurisdiction, *it may act only when the facts and circumstances exist upon which the legislature has conditioned its exercise of power.* . . . Such a court is without jurisdiction to act unless it does so under the precise circumstances and in the manner particularly prescribed by the enabling legislation.” (Emphasis added; internal quotation marks omitted.) *In re Henrry P. B.-P.*, 327 Conn. 312, 324, 173 A.3d 928 (2017).

The statute at issue, § 17a-498 (e), sets forth certain rights of the respondent relating to a hearing on an involuntary commitment application, including the opportunity to elect voluntary commitment status prior to adjudication. Section 17a-498 (e) provides in relevant part: “The respondent shall be given the opportunity to elect voluntary status under section 17a-506 at any time prior to adjudication of the application, subject to the following provisions: (1) In the event that a patient is in the hospital, the patient shall be informed by a member of the hospital staff within twenty-four hours prior to the time an application is filed with the court, that he or she may continue in the hospital on a voluntary basis under the provisions of section 17a-506, and any application for involuntary commitment by the hospital shall include a statement that such voluntary status has been offered to the respondent and refused . . . .”

We agree with the respondent that (1) there is no evidence indicating that a member of the institute staff informed the respondent that he could continue in the hospital on a voluntary basis and (2) the petition for involuntary commitment failed to include a statement that the respondent was offered voluntary commitment status and that he refused. See General Statutes § 17a-

498 (e). We conclude, however, that the failure of the institute staff to comply with the notice requirements of § 17a-498 (e) does not nullify the statutory authority of the Probate Court to hold an involuntary commitment hearing because the plain language of § 17a-498 has not "conditioned [the Probate Court's] exercise of power." (Internal quotation marks omitted.) *In re Henrry P. B.-P.*, supra, 327 Conn. 324.[6] We therefore reject the respondent's claim.[7]

## II

We now turn to the respondent's evidentiary claims. As a preliminary matter, we note that the rules of evidence apply to involuntary commitment proceedings. See General Statutes § 17a-498 (h) ("[t]he rules of evidence applicable to civil matters in the Superior Court shall apply to hearings under this section").

## A

The respondent claims that the Probate Court improperly admitted a police report into evidence because the report was not authenticated and did not satisfy the business record exception to the hearsay rule. We agree; however, we conclude that this error was harmless.

At the hearing, Sugarman testified that the respondent was a danger to others. Sugarman's testimony was predicated on a police report from November 28, 2018, which documented an anonymous complaint that the respondent had told someone at his mediation therapy group that he had homicidal fantasies.[8] Counsel for the petitioner proffered that police report as foundational support for Sugarman's conclusion that the respondent was a danger to others. Counsel for the respondent objected to the admission of the police report on the grounds that, inter alia, there was no one to authenticate the record and the record contained inadmissible hearsay. The Probate Court admitted the police report into evidence over the respondent's objections.

"An out-of-court statement used to prove the truth of the matter asserted is hearsay and is generally inadmissible unless an exception applies. . . . Police reports are normally admissible under the business records exception to the hearsay rule as set forth in General Statutes § 52-180.[9] . . . Witness statements contained within the reports, however, do not fall within this exception.[10] . . . To be admissible under the business record exception, the report must be based entirely upon the police officer's own observations or upon information provided by an observer with a business duty to transmit such information." (Citations omitted; footnotes in original; internal quotation marks omitted.) *Pirolo* v. *DeJesus*, 97 Conn. App. 585, 588–89, 905 A.2d 1210 (2006).

Moreover, "[a]uthentication is . . . a necessary preliminary to the introduction of most writings in evidence

. . . . A proponent may authenticate a document by demonstrating proof of authorship of, or other connection with, [such] writings. . . . In general, a writing may be authenticated by a number of methods, including direct testimony, circumstantial evidence or proof of custody. . . .

"The requirements for authenticating business record are identical to those for laying a foundation for its admissibility under the hearsay exception. It is generally held that business records may be authenticated by the testimony of one familiar with the books of the concern, such as a custodian or supervisor, who has not made the record or seen it made, that the offered writing is actually part of the records of the business." (Internal quotation marks omitted.) *Emigrant Mortgage Co.* v. *D'Agostino*, 94 Conn. App. 793, 811, 896 A.2d 814, cert. denied, 278 Conn. 919, 901 A.2d 43 (2006).

The police report did not fall within the business record exception to the hearsay rule because it was not based entirely on the police officer's own observations or on information provided by an observer with a business duty to report such information. See *Pirolo* v. *DeJesus*, supra, 97 Conn. App. 589. Specifically, the police report contained statements made by numerous individuals other than the reporting police officer or an observer with a duty to report, including those of an anonymous complainant, the respondent, and the respondent's father. The police report was also improperly admitted because the petitioner failed to authenticate the report through direct testimony, circumstantial evidence, or proof of custody. See *Emigrant Mortgage Co.* v. *D'Agostino*, supra, 94 Conn. App. 811–12. We therefore conclude that the police report was improperly admitted into evidence.

In any event, we are satisfied that the admission of the police report constituted harmless error. "When a court commits an evidentiary impropriety, we will reverse the trial court's judgment only if we conclude that the trial court's improper ruling harmed [a party]. . . . In a civil case, a party proves harm by showing that the improper evidentiary ruling likely affected the outcome of the proceeding." (Citations omitted; internal quotation marks omitted.) *DeNunzio* v. *DeNunzio*, supra, 320 Conn. 204.

As stated previously, counsel for the petitioner proffered the police report in reference to Sugarman's assessment that the respondent was a danger to others. The Probate Court ultimately concluded, however, that "based on the testimony by both the treating psychiatrist . . . Sugarman, and the two [appointed physicians], the court does not find proof that the respondent is presently a danger to others. He has not repeated any threats of harm and has maintained his composure during his stay at the [institute] and during the court hearing." The Superior Court concluded on appeal that

the admission of the police report was harmless because "[it] was admitted in reference to the issue of whether the [respondent] was a danger to others and the Probate Court found that he was not." The respondent did not address this conclusion by the Superior Court and failed entirely to brief the harmfulness prong of his evidentiary claim. See, e.g., *State* v. *Durdek*, 184 Conn. App. 492, 504–505, 195 A.3d 388 (to establish reversible error, appellant must prove existence of both erroneous ruling and resulting harm), cert. denied, 330 Conn. 934, 194 A.3d 1197 (2018). We agree with the Superior Court that the admission of the police report was harmless error and therefore reject the respondent's claim.

B

The respondent's second evidentiary claim is that the Probate Court improperly admitted two physician's certificates into evidence because § 17a-498 (c) does not provide that sworn certificates by psychiatrists are evidence. We reject his claim.[11]

The following additional facts and procedural history are relevant. On December 18, 2018, pursuant to § 17a-498 (c) (1), the Probate Court appointed Nelken and Peterson to examine the respondent and to report their findings on physician's certificates. Peterson examined the respondent and reported his findings on December 23, 2018. Nelken examined the respondent on December 20, 2018, and reported his findings on December 26, 2018. At the commitment hearing, the certificates completed by the appointed physicians were not proffered by either party to be admitted into evidence. The hearing transcript, however, reveals that the Probate Court had the two certificates in its possession and considered them.[12] Counsel for both parties questioned the appointed physicians regarding their respective certificates and, at times, had portions of those certificates read into the record. Following the hearing, the Probate Court issued a decree stating in part: "The sworn certificates of two physicians, at least one of whom is a practicing psychiatrist, have been filed in court and *were admitted into evidence pursuant to* [*§*] *17a-498* (*c*). [Counsel for] the respondent, filed a request for the two independent psychiatrists to testify at the hearing . . . . Both [appointed physicians] were present and provided testimony as witnesses at the hearing." (Emphasis added.) To resolve the respondent's claim, we must determine whether the Probate Court properly considered the two certificates as evidence, pursuant to § 17a-498, in reaching its decision.

Section 17a-498 (c) (1) provides in relevant part: "The court shall require the certificates, signed under penalty of false statement, of at least two impartial physicians selected by the court, one of whom shall be a practicing psychiatrist . . . . Such certificates shall indicate that the physicians have personally examined the respon-

dent not more than ten days prior to such hearing. . . . Each such physician shall make a report on a separate form provided for that purpose by the Probate Court Administrator and shall answer such questions as may be set forth on such form as fully and completely as reasonably possible. Such form shall include, but not be limited to, questions relating to the specific psychiatric disabilities alleged, whether or not the respondent is dangerous to himself or herself or others, whether or not such illness has resulted or will result in serious disruption of the respondent's mental and behavioral functioning, whether or not hospital treatment is both necessary and available, whether or not less restrictive placement is recommended and available and whether or not the respondent is incapable of understanding the need to accept the recommended treatment on a voluntary basis. Each such physician shall state upon the form the reasons for his or her opinions. Such respondent or his or her counsel shall have the right to present evidence and cross-examine witnesses who testify at any hearing on the application. If such respondent notifies the court not less than three days before the hearing that he or she wishes to cross-examine the examining physicians, the court shall order such physicians to appear."

"When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . . The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation." (Citation omitted; internal quotation marks omitted.) *Small* v. *Going Forward, Inc.*, 281 Conn. 417, 421–22, 915 A.2d 298 (2007). "We will not torture the plain wording of a statute to impart a meaning not expressed by its unambiguous language." *Palosz* v. *Greenwich*, 184 Conn. App. 201, 215 n.14, 194 A.3d 885, cert. denied, 330 Conn. 930, 194 A.3d 778 (2018). "Honest disagreement about the interpretation of a statutory provision does not . . . make the statute ambigu-

ous or vague." (Internal quotation marks omitted.) *State* v. *Dudley*, 332 Conn. 639, 646, 212 A.3d 1268 (2019).

We conclude that the plain and unambiguous meaning of § 17a-498 (c) dictates that the Probate Court must require, and therefore consider as evidence, the certificates of at least two physicians as a prerequisite to involuntarily committing the respondent. Section 17a-498 sets forth the principal components of involuntary civil commitment procedure. See *State* v. *Dyous*, 307 Conn. 299, 301 n.2, 53 A.3d 153 (2012). The statute provides that the Probate Court "*shall require the certificates*, signed under penalty of false statement, *of at least two impartial physicians* selected by the court, one of whom shall be a practicing psychiatrist . . . ." (Emphasis added.) General Statutes § 17a-498 (c). It does not make sense that the Probate Court would be prohibited from considering those *required* certificates unless formally admitted into evidence. Our construction of the statute is supported by the fact that "[s]uch respondent or his . . . counsel *shall have the right to present evidence and cross-examine witnesses who testify* at any hearing on the application. If such respondent notifies the court not less than three days before the hearing that he or she wishes to cross-examine the examining physicians, the court shall order such physicians to appear." (Emphasis added.) General Statutes § 17a-498 (c). That is, the respondent's ability to challenge the statements contained in the certificates would serve little purpose if the court were prohibited from considering the statements therein as evidence. Accordingly, we reject the respondent's claim.

### III

The respondent claims that the Probate Court's findings that he was gravely disabled and that a less restrictive placement was not available were clearly erroneous, arbitrary or capricious, characterized by an abuse of discretion, or a clearly unwarranted exercise of discretion because they were based on inadmissible evidence.[13] We disagree.

As stated previously, on appeal, we shall affirm the decision of the Probate Court unless the "substantial rights of the person appealing have been prejudiced because the findings, inferences, conclusions or decisions are . . . (5) clearly erroneous in view of the reliable, probative and substantial evidence on the whole record, or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." General Statutes § 45a-186b. "Given that § 45a-186b was also a component of the legislature's probate reform in 2007, there is a lack of appellate jurisprudence regarding its application. . . . The language of § 45a-186b, however, is virtually identical to the language used in General Statutes § 4-183 (j) of the Uniform Administrative Procedure Act. Given the similarity of this statutory language, our application of

§ 4-183 (j) is instructive.

"As this court has previously noted, the scope of our review regarding an administrative appeal is restricted. A court must determine whether there is substantial evidence in the administrative record to support the agency's findings of basic fact and whether the conclusions drawn from those facts are reasonable. . . . Neither this court nor the trial court may retry the case or substitute its own judgment for that of the administrative agency on the weight of the evidence or questions of fact. . . . Our ultimate duty is to determine, in view of all of the evidence, whether the agency [or court], in issuing its order, acted unreasonably, arbitrarily, illegally or in abuse of its discretion. . . . The substantial evidence standard is satisfied if the record provides a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . As an appellate court, we do not review the evidence to determine whether a conclusion different from the one reached could have been reached. . . . The goal of our analysis is simply to decide whether the trial court's conclusion was reasonable. . . . Using this standard as a backdrop, we will give deference to the Probate Court's determination of the credibility of witnesses and its factual determinations." (Citations omitted; footnote omitted; internal quotation marks omitted.) *Falvey* v. *Zurolo*, supra, 130 Conn. App. 256–57.

The following additional facts are relevant to our resolution of the respondent's claim. At the commitment hearing, Sugarman, Peterson, and Nelken testified as to the respondent's condition. All three physicians testified that the respondent is gravely disabled. All three opined that the respondent's psychiatric disability resulted in serious disruption of his mental and behavioral functioning and that his psychiatric disability will result in a serious disruption of his mental and behavioral functioning in the future. They further opined that hospital treatment is necessary for the respondent, that a less restrictive placement is not recommended, and that the respondent is not capable of understanding the need to accept treatment on a voluntary basis.

Sugarman diagnosed the respondent with "delusional disorder, rule out schizophrenia." He testified that the respondent harbors unusual beliefs despite the fact that they may not be real and that the respondent is prone to misinterpreting, such as his delusional thoughts that people are going to turn against and take control of him. Sugarman further testified that the respondent is suspicious, guarded, paranoid, and mistrustful of others. Sugarman stated that the respondent has misinterpreted innocent events in a dangerous way in the past and may do so in the future unless he is properly treated. Sugarman testified that if the respondent were released, he would not be compliant with his medication regimen, group therapy, or individual therapy. Moreover, the only

place that the respondent can go is to his father's house, which Sugarman believed was unsafe because the father might encourage the respondent's thinking and does not support his treatment. Due to the respondent's mental state, Sugarman opined that the respondent would not be able to behave in an appropriate manner and to find his way in society. Sugarman further testified that the respondent was on an involuntary medication order. Sugarman had no doubt that the respondent should be involuntarily committed.

Peterson diagnosed the respondent with schizophrenia. Peterson opined that the respondent was gravely disabled because his perception of reality is impaired. He further opined that the respondent remains paranoid and delusional, with ongoing fantasies of killing others. Peterson testified that the respondent has no insight into the nature and seriousness of his situation. Peterson testified that the respondent told his therapist that he had a fantasy of wearing a mask and walking through a school with a rifle.

Nelken diagnosed the respondent with "paranoid schizophrenia, chronic." Nelken opined that the respondent was gravely disabled because he is too fearful and agitated to manage on his own. Nelken opined that the respondent became homicidal from persecutory delusions. Nelken opined that the respondent is permanently disabled and requires a structured setting to support his treatment. Nelken testified that the respondent had an unusual self-concept and attitude toward the world. Nelken stated that it was "evident to [him] that this is a young man who is struggling with feelings that he doesn't know how to control any way except by physical rigidity and . . . very careful speech. This . . . is somebody who's in grave distress." Nelken testified that the respondent has homicidal fantasies, has threatened people at gunpoint, and was struggling to regulate his emotions. Nelken further testified that the respondent objects to the medication he was being given. Nelken also testified that the respondent was unable to discuss his difficulties while he was in the armed services: "He is unable to . . . comprehend how it was that he was separated from the service or . . . to make any account of his actions at that time. He's not able to discuss his internal processes. And I said at the outset, he gives very unusual and bizarre evidence of attempting to physically restrain himself as a way of controlling his emotions and his actions."

Following the hearing, the Probate Court found as follows: "The testimony provided by the three psychiatrists does indicate that at this time the respondent is gravely disabled. And while the [c]ourt does agree that many individuals with the respondent's present diagnosed condition are able to live in a less restrictive environment, at this time, this does not seem to be a viable option in the present case. The testimony [of the

physicians is consistent in] that the [respondent] was not participating in his treatment plans or communicating his intents for discharge with the treatment plan. He remains under an order for involuntary medication. The [c]ourt is aware that the respondent's father is seeking alternative treatment programs and believes that these should be explored as part of his discharge plan. Therefore, the court finds by clear and convincing evidence that the respondent has psychiatric disabilities and is gravely disabled. The court further finds that a less restrictive placement is not available at this time."

The respondent was thus involuntarily committed pursuant to § 17a-498 (c) (3), which provides in relevant part: "If the court finds by clear and convincing evidence that the respondent has psychiatric disabilities and is dangerous to himself . . . or others or gravely disabled, the court shall make an order for his . . . commitment, considering whether or not a less restrictive placement is available, to a hospital for psychiatric disabilities to be named in such order, there to be confined for the period of the duration of such psychiatric disabilities or until he . . . is discharged or converted to voluntary status pursuant to section 17a-506 in due course of law. . . ." "Gravely disabled" is defined pursuant to General Statutes § 17a-495 (a) as a person who, "as a result of mental or emotional impairment, is in danger of serious harm as a result of an inability or failure to provide for his or her own basic human needs such as essential food, clothing, shelter or safety and that hospital treatment is necessary and available and that such person is mentally incapable of determining whether or not to accept such treatment because his judgment is impaired by psychiatric disabilities."

We are not persuaded by the respondent's claim that the Probate Court's findings that he was gravely disabled and that a less restrictive placement was not available were clearly erroneous, arbitrary or capricious, characterized by an abuse of discretion, or a clearly unwarranted exercise of discretion. There is substantial evidence in the record that the respondent was indeed gravely disabled and that a less restrictive placement was not a viable option at that time. Specifically, the Probate Court reasonably could have inferred from the substantial evidence, including his homicidal fantasies, persecutory delusions, and objections to medication, that the respondent was in danger of serious harm as a result of an inability to provide for his own basic needs and that he was incapable of determining whether to accept hospital treatment because his judgment is impaired. We therefore conclude that the Probate Court's findings were not erroneous as the respondent claims.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] General Statutes § 17a-498 (e) provides in relevant part: "The respondent

shall be given the opportunity to elect voluntary status under section 17a-506 at any time prior to adjudication of the application, subject to the following provisions: (1) In the event that a patient is in the hospital, the patient shall be informed by a member of the hospital staff within twenty-four hours prior to the time an application is filed with the court, that he or she may continue in the hospital on a voluntary basis under the provisions of section 17a-506, and any application for involuntary commitment by the hospital shall include a statement that such voluntary status has been offered to the respondent and refused . . . ."

[2] General Statutes § 17a-506 (a) provides: "Any hospital for psychiatric disabilities may receive for observation and treatment any person who in writing requests to be received; but no such person shall be confined in any such hospital for psychiatric disabilities for more than three business days, after he or she has given notice in writing of his or her desire to leave, unless an application for commitment has been filed in a court of competent jurisdiction. Such person shall be informed at the time of such admission concerning such patient's ability to leave after three days' notice pursuant to this subsection and shall also be informed that an application may be filed under subsection (e) of this section in which case such patient's ability to leave may be delayed in accordance with the provisions of said subsection."

[3] Joanne Fogg-Waberski, the superintendent of the institute; Michael Nelken, a psychiatrist; Gregory Peterson, a psychiatrist; and the respondent's father were also named as defendants.

[4] The findings of the appointed physicians were reported to the court on a form titled, "PHYSICIAN'S CERTIFICATE/INVOLUNTARY COMMITMENT/ ANNUAL REVIEW/PERSON WITH PSYCHIATRIC DISABILITIES" (physician's certificate).

[5] General Statutes § 45a-186 provides in relevant part: "(b) Any person aggrieved by an order, denial or decree of a Probate Court may appeal therefrom to the Superior Court. . . . (d) An appeal from a decision rendered in any case after a recording of the proceedings is made under section 17a-498 . . . shall be on the record and shall not be a trial de novo. . . ."

[6] Concomitantly, the respondent argues that the Probate Court lacked jurisdiction. We do not agree. We conclude that the institute's failure to offer the respondent voluntary commitment status did not deprive the Probate Court of jurisdiction over the involuntary commitment proceedings because the notice requirement of § 17a-498 (e) is not jurisdictional, and the respondent has not cited any legal authority to indicate otherwise. General Statutes § 17a-497 (a) addresses the Probate Court's jurisdiction over involuntary commitment proceedings, and, notably, the notice requirement of § 17a-498 (e) is not implicated: "The jurisdiction of the commitment of a person with psychiatric disabilities to a hospital for psychiatric disabilities shall be vested in the Probate Court . . . . In any case in which the person is hospitalized in accordance with the provisions of sections 17a-498, 17a-502 or 17a-506, and an application for the commitment of such person is filed in accordance with the provisions of said sections, the jurisdiction shall be vested in the Probate Court for the district in which the hospital where such person is a patient is located. . . . *The Probate Court shall exercise such jurisdiction only upon written application alleging in substance that such person has psychiatric disabilities and is dangerous to himself or herself or others or gravely disabled.*" (Emphasis added.)

[7] Although the following facts do not affect our resolution of this claim, we view them as worth noting. The respondent signed a voluntary application to be admitted to the institute on December 14, 2018, which was four days prior to the petitioner's filing a petition for the respondent's involuntary commitment. That voluntary application set forth the notice requirements of § 17a-506 (a). The record does not indicate whether, pursuant to § 17a-498 (e), the respondent was informed, within twenty-four hours prior to the petition for involuntary commitment being filed, that he could continue at the institute on a voluntary basis.

[8] Specifically, the police report stated that an anonymous complainant asked the respondent about his homicidal thoughts, and he stated that "he could see himself wearing all black, a mask, body armor and a rifle while walking down a hallway."

[9] "The business records exception is codified in General Statutes § 52-180, which provides in relevant part: '(a) Any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence or event, shall be admissible as evidence of the act, transaction, occurrence or event, if the trial judge finds

that it was made in the regular course of any business, and that it was the regular course of the business to make the writing or record at the time of the act, transaction, occurrence or event or within a reasonable time thereafter. . . .' See also Conn. Code Evid. § 8-4." *Pirolo* v. *DeJesus*, 97 Conn. App. 585, 588 n.1, 905 A.2d 1210 (2006).

[10] "Statements of witnesses contained within a police report add another level of hearsay. These statements, therefore, must fall within an exception to the hearsay rule to be properly admitted. *Hutchinson* v. *Plante*, 175 Conn. 1, 5, 392 A.2d 488 (1978) ('[i]tems in a business entry not based on the entrant's personal knowledge add another level of hearsay . . . and some exception to the hearsay rule must be found to justify admission' . . .)." *Pirolo* v. *DeJesus*, 97 Conn. App. 585, 589 n.2, 905 A.2d 1210 (2006).

[11] The respondent also claims that the Probate Court improperly admitted two physician's certificates into evidence because (1) no party moved to admit the sworn certificates into evidence, and (2) even if the petitioner had proffered them as evidence, they contained inadmissible hearsay. We need not reach these claims given our determination that the Probate Court properly considered the certificates pursuant to § 17a-498 (c) (1). See Conn. Code of Evid. § 1-1 (b) ("[t]he Code and the commentary apply to all proceedings . . . except as otherwise provided by the . . . General Statutes").

[12] Prior to hearing the testimony of the appointed physicians, the Probate Court stated: "Dr. Nelken, we'll be right with you. . . . And you've been sworn and he stated his name for the record. . . . I believe that . . . counsel for the patient, the respondent, would like to ask some questions of you in regard to . . . [two] outside psychiatrists, um, physician's certificates that are required to be . . . provided to the court along with . . . an involuntary commitment petition."

[13] We resolve this claim consistent with our evidentiary conclusions found in part II of this opinion. In other words, we do not consider the content of the police report; however, we do consider the contents of the physician's certificates.